**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Leon SPENCER,**
**Defendant-Appellant.**

**No. 79–1085.**

United States Court of Appeals,
Ninth Circuit.

May 12, 1980.

Fern M. Segal, Asst. U. S. Atty., Sacramento, Cal., argued, Julian G. Macias, Sacramento, Cal., on brief, for plaintiff-appellee.

Atklin G. Brown, Stockton, Cal., on brief, for defendant-appellant.

Before KENNEDY and ALARCON, Circuit Judges, and GRANT,* District Judge.

GRANT, Senior District Judge:

This case requires an examination of the evidence preservation and disclosure requirements mandated by the Jencks Act, 18 U.S.C. § 3500.

In January 1979 counterfeit hundred dollar bills were passed in Stockton, California. The defendant, John Leon Spencer, became a key suspect in a Secret Service investigation of the counterfeit currency. The agent in charge of that investigation informed the Stockton police that Spencer was believed to be carrying forged bills. Although no warrant had been issued for passing the counterfeit Federal Reserve notes, the agent did inform the police that Spencer was wanted on an unrelated state misdemeanor warrant, and provided the suspect's work and home addresses.

Acting on this information, Detective Michael Brooks was detailed by the Stockton police to make the arrest. As Spencer climbed down from a truck at his place of employment, he was arrested on the state misdemeanor warrant. The defendant eventually consented to a search of the truck which yielded twenty counterfeit one hundred dollar bills and other contraband. Spencer was tried and convicted of possessing and passing these spurious notes, pursuant to Title 18 U.S.C. § 472.

At trial Officer Brooks testified as to his role in the arrest and the resulting search. Spencer was supplied with the officer's written report, made approximately two hours after the arrest and seizure were completed. During cross examination Officer Brooks did acknowledge that he made rough notes during the assignment which led to the arrest of the defendant, and that these notes were used in compiling his final report. The notes were routinely destroyed

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana, sitting by designation.

after the formal report was written. Spencer requested that Brooks' testimony be stricken, claiming the rough notes were statements with respect to the Jencks Act, and that their destruction should result in sanctions on the related evidence. This motion was denied. The district court ruled that the surveillance notes were not statements as that term is defined in the Jencks Act, 18 U.S.C. § 3500(e). The only question before us is assessing the correctness of this determination.

The Jencks Act, *supra*, requires the government to furnish the defense with any statement made by a government witness which has been adopted or approved by the witness, and which relates to his testimony at trial. 18 U.S.C. § 3500(b), (e)(1). Deciding when the notes of a government agent actually comport with this definition has been a source of controversy since the Act was passed. In *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), this court ruled that government agents must preserve their original interview notes made when a potential government witness, or the accused, is questioned. *See also, United States v. Harrison*, 524 F.2d 421 (D.C.Cir. 1975); *United States v. Robinson*, 546 F.2d 309 (9th Cir. 1976). The statements in those cases were complete renditions of the witness' testimony, but it was the adoption or approval of these statements by the witness which makes the government agent's notes "statements" as that term is used in Section 3500(e)(1). In fact, the witness had the statement read back to him, or read what the agent had written. This validated the notes. Such a careful procedure is necessary to make the description written by the agent a statement of what the witness saw or did. Therefore, when the agent makes a final report, he is utilizing a statement within the purview of Section 3500(e)(1). *See Goldberg v. United States*, 425 U.S. 94, 110, 96 S.Ct. 1338, 1348, 47 L.Ed.2d 603 (1976); *see also id.* at 112–116, 96 S.Ct. at 1349–1351 (Stevens, J., concurring).

At the same time, some of the notes that must be preserved under *United States v. Harris, supra*, will not be statements. This occurs when the notes are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigators' selections, interpretations, and interpolations. The Congressional policy behind the Jencks Act was to protect witnesses from being impeached with words that are not their own, or are an incomplete version of their testimony. *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1957). *United States v. Augenblick*, 393 U.S. 348, 354–356, 89 S.Ct. 528, 532–533, 21 L.Ed.2d 537 (1969); *Wilke v. United States*, 422 F.2d 1298, 1299 (9th Cir. 1970). The Jencks Act policy has been to allow access only when there is a narrative statement of the witness' testimony and where it has been adopted or approved by him. *Harris, supra*, does not change these policies. The *Harris* rule merely requires the preservation of one type of potentially discoverable materials for a judicial determination of their status under the Jencks Act. *United States v. Harris, supra*, at 1251. In this respect, *Harris* is in accord with the spirit of the Supreme Court's decisions construing the Jencks Act, where they rely upon the "good sense and experience" of the trial judge to decide what materials should be produced under the Jencks Act. *United States v. Augenblick, supra*, 393 U.S. at 355, 89 S.Ct. at 533; *Palermo v. United States*, 360 U.S. at 353, 79 S.Ct. at 1225.

Spencer now contends that the *Harris* decision should be extended beyond the interview scenario, and should be transformed into a broad prophylactic rule that would require law enforcement officers to retain all the rough notes made in the course of their criminal investigations. We must decline this invitation, reiterating the results reached in *United States v. Bernard*, No. 78–3033 (9th Cir. Apr. 28, 1980), and *United States v. Carrasco*, 537 F.2d 372, 377 (9th Cir. 1976). In *Bernard*, federal drug enforcement agents maintained a surveillance of a methamphetamine "factory", and eventually arrested a number of persons involved in this enterprise. As in the present case, the agents in *Bernard* prepar-

ed final reports and then routinely destroyed their surveillance notes. Before trial the district court ordered the agents' testimony suppressed due to the destruction of the rough notes, although the agents' final reports would have been supplied to the defendants.

This judgment was reversed, the court refusing to apply the *Harris-Robinson* rule to the notes in question. The sketchiness and incompleteness of these notes were sufficient to preclude them from being statements as defined in Section 3500(e)(1). *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); cited in *United States v. Bernard, supra,* at 13. *See also United States v. Augenblick, supra,* 393 U.S. at 354, 89 S.Ct. at 532. As the *Bernard* Court pointed out, similar results had been reached in distinguishing between the *Harris* type interview notes and surveillance notes of the *Bernard* type by the Tenth Circuit in *United States v. Lane,* 574 F.2d 1019 (10th Cir. 1978). We believe the *Bernard* court reached a sound conclusion.

If the holding in *United States v. Bernard, supra,* is sound from a purely legal standpoint, it also makes good sense in light of prudential considerations. This was anticipated in *United States v. Carrasco, supra,* 537 F.2d at 377.

> The benefits to defendants in those few cases [where] revision produces substantial distortion may not justify the costs of retaining all rough notes in all cases.

The retention requirements implicit in Spencer's proposed reading of the Jencks Act are potentially staggering. Besides retaining every scrap of paper that could be required, the same logic would dictate that all original tapes of conversations would also have to be maintained. The result from a policy standpoint would be the creation of an unwieldy national attic of scrap paper and magnetic tape which would not advance the cause of justice.

While it would be a judicial invasion of proper law enforcement to require the preservation of all such notes, we are cognizant that police departments could selectively save those notes that experience teaches

will be discussed in cross-examination. This will prevent a clever cross-examiner from raising the red herring that potentially exculpatory evidence was destroyed in the vast number of cases where the notes were not in any way exculpatory.

For these reasons we AFFIRM the decision of the trial court and the defendant's conviction.