**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**James Douglas GRIFFIN,
Defendant-Appellee.**

No. 79–1412.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1979.

Decided Oct. 19, 1981.

Rehearing and Rehearing Denied En Banc Denied Jan. 13, 1982.

* Honorable William J. Jameson, Senior U. S. District Judge for the District of Montana, sitting by designation.

Dale A. Danneman, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellant.

David M. Heller, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellee.

Before TRASK and KENNEDY, Circuit Judges, and KELLEHER *, District Judge.

KELLEHER, District Judge:

On March 22, 1979, defendant James Douglas Griffin was indicted by a grand jury in Phoenix, Arizona on eighteen counts of embezzlement of union funds in violation of 29 U.S.C. § 501(c) and seventeen counts of embezzlement from an employee benefit plan in violation of 18 U.S.C. § 664.

This indictment was the culmination of a two and one-half year investigation by civil compliance officers of the U.S. Department of Labor. The investigation began on Sep-

---

* Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation.

tember 14, 1976 in response to a report by Donald Prosise, Business Agent for Roofer's Union Local 135, Phoenix, Arizona and Robert Wardle, Management Representative of the Phoenix Roofing Industry Joint Apprenticeship Committee, made to the Labor Management Services Administration of the U.S. Department of Labor. Prosise and Wardle had reported that defendant allegedly had embezzled funds from Local 135 and the Joint Apprenticeship Committee.

From September 14, 1976 through December 18, 1978 civil compliance officers from the Department of Labor conducted thirty-seven interviews on topics ranging from a description of defendant's position, of his responsibilities with the Union and of the operating procedures for the various funds from which the embezzlements allegedly occurred to his current address.

The compliance officers used their rough, handwritten notes to prepare formal interview reports, incorporating therein the material from the notes. Compliance Officer Logan testified at a pre-trial proceeding that her notes were completely incorporated into the formal reports, except for matters in her notes unrelated to the Griffin investigation—such as other problems encountered by the Union officials being interviewed that were unrelated to defendant's alleged embezzlement—which were omitted from the formal reports. Ms. Logan's affidavit states that the handwritten interview notes were not a verbatim transcription of the interviewee's remarks. Further, Ms. Logan states that she neither read back nor showed her rough notes of the interview to any of the interviewees.

The thirty-seven interviews conducted by the compliance officers were of twenty-four persons, including defendant. Of these thirty-seven interviews, the investigators' rough notes of twenty-two interviews were retained for ten of the interviewees (including defendant). All interview notes were retained for some twelve persons. Notes from at least one interview were retained for two persons who were interviewed on more than one occasion. The government states that copies of all of the formal interview reports are available and were provided to the defendant.

The government stated that it would call as witnesses at trial only five of the persons for whom no rough interview notes were retained: Donald Prosise, the business manager of Local 135 during most of the period to which the indictment relates; James Graham, a management representative of the Joint Apprenticeship Committee; two employees of Valley National Bank where the Union local maintained accounts, Ms. Hernandez and Ms. Marschante; and Terry Dunn of LaBelle's Discount Store, a Phoenix retail store where defendant allegedly made purchases.

Additionally, on April 9, 1979, the government filed a notice of its intention to offer the statement of an unavailable witness, Robert Wardle, pursuant to Fed.R.Evid. 804(b)(5). Wardle, a management representative on the Joint Apprenticeship Committee, died in June, 1977. Wardle and Prosise, business agent for Union Local 135, made the initial report of defendant's suspected embezzlement by telephone to a Department of Labor Compliance Officer on September 14, 1976. No notes were retained from this interview, although a two-page formal interview report was prepared. Wardle was also interviewed on February 18, 1977, the product of which was a thirteen page statement signed by Wardle. The rough notes of the investigator were not retained.

On April 5, 1979, defendant filed a motion seeking: (1) pursuant to Fed.R.Cr.P. 16(a)(1)(A) and *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), production of copies of all handwritten notes made by government agents while interviewing defendant; (2) pursuant to *Harris, id.*, preservation of all handwritten notes of interviews of witnesses for possible use at trial as Jencks Act, 18 U.S.C. § 3500, material; (3) pursuant to Fed.R.Cr.P. 16(a)(1)(C), production of all documents, photographs, and other tangible objects within the custody or control of the government which are material to defense preparation; and (4) pursuant to *Brady v. Maryland*, 373 U.S. 83, 83

S.Ct. 1194, 10 L.Ed.2d 215 (1963), production of all evidence with a potential use for impeachment of government witnesses. On April 16, 1979, the Court ordered defendant's motion for production stricken for failure to comply with the informal discovery procedure prescribed in Fed.R.Cr.P. 16. On April 16, defendant renewed his request by letter to the United States Attorney.

On May 1, 1979, the government provided defendant with a list of all persons interviewed, the dates of the interviews, and a statement of whether the rough interview notes had been retained by the interviewing compliance officer. On May 4, 1979, defendant filed a motion to dismiss the indictment or, in the alternative, to strike the testimony of all witnesses for whom rough interview notes had not been retained. Defendant's motion relied on Fed.R.Cr.P. 16, the Jencks Act, and *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976). The government filed an opposition to defendant's motion. On May 11, 1979, a hearing on defendant's motion was had before Hon. William P. Copple, United States District Judge for the District of Arizona.

On May 18, 1980, the district court filed an order dismissing with prejudice the indictment against defendant Griffin. The district court reasoned:

> Striking the testimony of all 22 witnesses, or even those the government states it intends to call, may eliminate the Jencks Act problem but not the *Brady* problem. In the view of the court, case law requires dismissal as the proper sanction. *U. S. v. Harris, supra; U. S. v. Harrison*, 524 F.2d 421 (D.C. Cir. 1975);

*U. S. v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971).

> It is hoped the United States will appeal this decision.

The issue presented for determination by this Court is whether the district court erred in dismissing the indictment prior to trial because government investigators destroyed their handwritten rough notes of interviews with various persons after incorporating the information contained therein into formal interview reports.

· I.

*Issue of Producibility of Rough Interview Notes Under the Jencks Act*

■ In general, the Jencks Act, 18 U.S.C. § 3500 prohibits the pre-trial discovery of statements made by prospective government witnesses.[1] However, after such a witness testifies at trial, the Act requires that the government produce upon demand any available statement made by the witness which relates to the subject matter of such witness's testimony at trial. The Act narrowly defines "statements" as: (1) writings made by the witness and "signed or otherwise approved or adopted" by him, or (2) accounts which are "a substantially verbatim recital" of the witness's oral statements "recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500(e).

In *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), we held that the F.B.I. must preserve the original notes taken by agents during interviews with prospective witnesses to enable the court to play their proper role in determining what evidence must be

---

1. The Jencks Act, 18 U.S.C. § 3500, provides in pertinent part:

   (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

   (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

produced pursuant to the Jencks Act.[2] Where such rough interview notes have been discarded prior to trial, the district court must determine what sanctions, if any, should be applied to remedy such non-production. Such a determination necessarily must begin with consideration of whether such rough notes are deemed to constitute Jencks Act "statements."

■ Whether original notes can be considered "statements" under the Jencks Act depends, first, on *whose* statement allegedly is contained therein; that is, against whose testimony at trial they could be used as impeachment material. Thus, on the one hand, the district court must determine whether the investigator's rough notes should be considered a Jencks Act "statement" of an *interviewee*, who at trial may testify as a government witness. If Compliance Officer Logan's pretrial testimony, that her rough notes of the interviews were neither read to each interviewee nor adopted or approved by any of them, is not disputed, then her rough notes cannot be "statements" of the interviewees under § 3500(e)(1), which requires that a written statement be "signed or otherwise approved." Likewise, if Officer Logan's testimony is unrefuted, the rough notes could not be Jencks Act statements of the interviewees under § 3500(e)(2) since they are not verbatim recitals of the interviewees' oral statements. *See United States v. Bernard*, 623 F.2d 551, 558 n.21 (9th Cir. 1980) (as revised). In other words, unless one or more of the interviewee-witnesses offered by the government at trial testifies that his interview was transcribed verbatim into the compliance officers' rough notes or that the notes were read back and approved, the

rough notes, some of which were destroyed, would not be Jencks Act "statements."[3]

■ On the other hand, the district court also must determine whether the rough notes should be considered as *the agent's* "statement" for Jencks Act purposes should any of the officers become a government witness at trial. It is highly unlikely that the agents' rough notes could be considered Jencks Act statements. In the first place, with regard to that portion of an agent's notes which records his thoughts and observations independent of the interviewee's remarks, an agent's rough notes usually are considered too cryptic and incomplete to constitute the full statement envisioned by the Jencks Act. As we stated in *United States v. Spencer*, 618 F.2d 605 (9th Cir. 1980), an agent's rough notes will not be Jencks Act statements when they "are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations. The Congressional policy behind the Jencks Act was to protect witnesses from being impeached with words that are not their own, *or are an incomplete version of their testimony.*" *Id.* at 606 (emphasis added), *citing Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1957); *United States v. Augenblick*, 393 U.S. 348, 354–56, 89 S.Ct. 528, 532–34, 21 L.Ed.2d 537 (1969); and *Wilke v. United States*, 422 F.2d 1298, 1299 (9th Cir. 1970). Furthermore, if the agent later adopts or approves that portion of his notes which does not simply record the remarks of the interviewee, his act of approval is likely to attach more to his *completed* formal report than to the "jottings" from which the agent drafts the report. In that event, it is the final report which becomes

2. We find the preservation requirements laid down in *Harris* to apply to the record-keeping practices of the civil compliance officers who conducted the interviews in the instant case. Here their investigation led to the prosecution of a criminal offense, and their efforts to generate testimony did not differ substantially from those which would have been undertaken by criminal law enforcement agents. *Cf. United States v. Spencer*, 618 F.2d 605 (9th Cir. 1980) (where we held that, although *Harris* required

the preservation of notes by state as well as federal agents, it did not require government agents to preserve rough *surveillance* notes).

3. Should the district court find, contrary to the facts presented thus far, that the destroyed notes of the agents' interview with a government witness were either approved by the witness or a verbatim recital of the interviewee's remarks, then the proper sanction would be the striking of only that witness' testimony.

938

the Jencks Act statement and not the rough notes.[4]

■ Furthermore, that portion of the agent's rough interview notes which does simply record, be it in either verbatim or paraphrased form, the interviewee's remarks cannot be a "statement" for Jencks Act purposes when the agent testifies as a government witness because it does not represent the *agent's own* words. As the Supreme Court recognized when it reviewed the legislative history of the Jencks Act in *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1957), "It is clear that Congress was concerned that only those statements which could properly be called the *witness' own words* should be available to the defense for purposes of impeachment." *Id.* at 353 (emphasis added, footnote omitted). Therefore, except in the unlikely event that the civil compliance officers recorded their own observations during the interviews in complete and full form in their handwritten notes, the rough notes would not be Jencks Act statements producible for the purpose of impeaching the testimony of any one of the officers as a government witness at trial.

■ Finally, should the trial court determine, applying the foregoing analysis, that the rough notes constituted Jencks Act statements for some purposes, before it imposes sanctions for their destruction, it must determine further that the notes "relate to the subject matter" of the testimony which would be offered by the particular government witness, 18 U.S.C. § 3500(b), whether that witness be the agent herself or an interviewee. However, should the district court find, consistent with Officer Logan's testimony, that the rough notes were not Jencks Act statements for the purpose of impeaching either *the agent* or *the interviewees* as government witnesses, then unless their testimony should be precluded for other reasons, discussed below, it must permit them to testify if called by the government.[5]

4. We have held in several recent cases that, primarily because of their incomplete nature, an agent's surveillance records are not "statements" of the agent under the Jencks Act. *United States v. Cruz*, 607 F.2d 1010 (9th Cir. 1980, unpublished memorandum opinion); *United States v. Spencer*, 618 F.2d 605, 606–07 (9th Cir. 1980); *United States v. Bernard*, 623 F.2d 551, 558 (9th Cir. 1980, as revised). Likewise, in an interview context, an agent's own thoughts and observations, independent of his recording of the witness' remarks, may be recorded in a brief and incomplete manner. Only later, when the agent prepares his formal interview report, will the agent make the complete statement envisioned by the Jencks Act. This is consistent with the view envisioned in *United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976), *rehearing denied* (1976), where we ruled that "[a] statement, unlike notes or a diary, *seeks to transmit information* from the declarant to the reader." *Id.* at 375 (emphasis added). Thus, it will be the very unusual case where an agent's own thoughts will be recorded in rough interview notes with sufficient completeness or intent to communicate to be a Jencks Act statement. In the more typical case, only the formal interview report, through which the agent intends to communicate to others, will be a "statement" under the Jencks Act.

5. We reaffirm our holding in *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976) to the extent that it requires law enforcement agents to preserve their original notes taken during interviews with prospective government witnesses or with an accused in order "to permit courts to play their proper role in determining what evidence must be produced pursuant to the Jencks Act or other applicable law." *Ia.* at 1253. However, we note also that the imposition of sanctions is not justified where the rough interview notes of an agent are destroyed in good faith and those notes can be determined by secondary evidence not to be Jencks Act "statements." *See Ogden v. United States*, 323 F.2d 818 (9th Cir. 1963), *cert. denied*, 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964). For examples of reliance on secondary evidence to ascertain the character and content of rough notes no longer in existence, see *United States v. Augenblick*, 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969) (where the presiding military officer relied on the investigating agent's testimony that his rough interview notes were not a "substantially verbatim" transcript of the interviewee's remarks); *Campbell v. United States*, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); *Ogden v. United States*, 323 F.2d 818 (9th Cir. 1963), *cert. denied*, 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964). Of course, routine sanctions are appropriate where it appears that rough interview notes have been destroyed in bad faith. *See, e. g., United States v. DeLeon*, 498 F.2d 1327 (7th Cir. 1974) (where a DEA agent violated a magistrate's order to preserve his handwritten investigatory notes); *United States v. Lonardo*, 350 F.2d 523 (6th Cir. 1965)

## II.

*Issue of Producibility of Rough Notes under Brady v. Maryland*

In *United States v. Harris*, 543 F.2d 1247, 1252 (9th Cir. 1976), we held Jencks Act material may also implicate the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[6] However, unless defendant is able to raise at least a colorable claim that the investigator's discarded rough notes contained evidence favorable to defendant and material to his claim of innocence or to the applicable punishment—and that such exculpatory evidence has not been included in any formal interview report provided to defendant—no constitutional error of violation of due process will have been established. Defendant may make such a showing by way of examination of the agents, interviewees, and other available documentary evidence.[7]

As the Supreme Court observed in *United States v. Augurs*, 427 U.S. 97, 110–111, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976), "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." Accord-

ingly, constitutional error has been committed only if the non-disclosed evidence creates a reasonable doubt that otherwise failed to exist; hence, the omission of evidence must be evaluated in the context of the entire record. 427 U.S. at 112–113, 96 S.Ct. at 2402.

## III.

*Issue of Producibility of Defendant's Statements Under Fed.R.Cr.P. 16*

Defendant moved, pursuant to Fed.R. Cr.P. 16(a)(1)(A) and *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), for disclosure of all handwritten notes made by the government agents while interviewing defendant. According to the government, the investigators interviewed defendant on three separate occasions. On the first occasion, September 6 and 7, 1977, the rough notes made by the agent were incorporated into a seventeen-page statement written by the agent. Defendant then reviewed the statement, made corrections, initialled the changes, and finally signed the statement. The government states that the rough notes from which the handwritten statement was prepared were destroyed.

(where a stenographic transcript of a witness interview was deliberately destroyed a week before trial).

**6.** In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

**7.** This manner of proof will not be as ideal as would be the examination of the notes themselves. However, unless there is some indication, however small, either that the rough notes were destroyed in bad faith, *see* note 5, *supra*, or that they met the *Brady* requirements of materiality, we cannot hold that dismissal is the proper sanction. To read *Brady* as broadly as defendant requests would require the government to preserve all material even arguably related to the criminal transaction. Such a broad view conflicts with the restrictive rules for disclosure established by Congress in the Jencks Act, 18 U.S.C. § 3500. Indicative of the more narrow reading which should be given

*Brady* was the Supreme Court's rejection of defendant's argument in the Jencks Act context, *United States v. Augenblick*, 393 U.S. 348, 354–55, 89 S.Ct. 528, 532–533, 21 L.Ed.2d 537 (1969). In *Augenblick*, since the precise nature of an agent's lost interview notes could not be determined from the record, the Court refused to presume that they would be a sufficient transcript of a witness' remarks to be a Jencks Act "statement." Similarly, in the context of a defendant's claim for relief under *Brady*, the trial court should not *presume* that sanctions are appropriate under *Brady* where defendant has not satisfied the specific conditions there set forth. We note further that, in the *absence* of a showing by defendant under *Brady* of materiality and content favorable to defendant, the disclosure requirements of *Brady* cannot apply, since the detailed statutory procedures set forth by Congress in the Jencks Act were the exclusive vehicle by which prior statements of a government witness were to be disclosed. *See Palermo v. United States*, 360 U.S. 343, 347, 350, 79 S.Ct. 1217, 1222, 1250, 3 L.Ed.2d 1287 (1959).

On February 7, 1978, two agents interviewed defendant about the Union's petty cash practices, disbursals from the various benefit plans, and defendant's current employer. On October 27, 1978, an agent interviewed defendant regarding his current address and the location of a former Union accountant. The February, 1978 interview resulted in a one-half page interview report prepared by the agents. The October, 1978 interview resulted in a ten-line interview report. No notes were retained from either the February, 1978 or October, 1978 interviews, although the formal interview reports were available.

Fed.R.Cr.P. 16(a)(1)(A), provides in pertinent part:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the *substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant* whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; . . .

(emphasis added).

In *Kaplan v. United States*, 375 F.2d 895, 900 (9th Cir. 1967), *cert. denied*, 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967), this Court ruled:

> We find no error in the denial of [defendants'] motion to have government summaries of defendants' statements given before trial produced for [defendants'] use. No such *statements* were offered in evidence against defendants, or used at the trial against them in any way. [Defendants] demanded in . . . their motion the production of written memoranda made by government agents of oral statements made by defendants not shown to nor signed by defendants. They were not records 'belonging' to [defendants] Rule 16, Fed.R.Crim.P.

(other citations omitted) (emphasis in original). The Circuits have been split on this issue of whether the written summary of an oral statement made by a defendant to a government agent is discoverable under Rule 16. Several Circuits have held that such a summary is not a "written or recorded statement made by the defendant" subject to discovery. *E.g., United States v. Krilich*, 470 F.2d 341, 351 (7th Cir. 1972), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1897, 36 L.Ed.2d 399 (1973). Other Circuits have held such a written summary to be discoverable at the discretion of the trial court. *E. g., United States v. Johnson*, 525 F.2d 999, 1003–1004 (2d Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1976).

Defendant relies on *Harris* in support of his motion to inspect the rough notes of his discussions with the agents. However, any requirement of preservation of rough notes of agent interviews with defendant laid down by *Harris* under Rule 16 is dictum, as the *Harris* court conceded: "Although the record in this case does not reflect a discovery motion pursuant to Rule 16 by the appellant, the above-cited authorities [from other Circuits] underscore the importance of preserving original interview notes." 543 F.2d at 1253. Thus, *Harris* actually failed to reach the issue of whether Rule 16 requires the preservation—and subsequent production—of an agent's rough notes of an interview with defendant.

■ The district court's order in the case at hand fails to address defendant's request under Rule 16. However, as to the seventeen-page statement which defendant reviewed, corrected, and then adopted, delivery to defendant of the statement itself as adopted by defendant is sufficient. No error would arise from the failure to produce the rough notes from which such statement was drawn. At the time he signed and thereby adopted the seventeen-page statement, the opportunity to correct any misstatements or omissions was available to, and in fact utilized by, defendant. Hence, defendant can claim no prejudice from destruction of the rough notes of September 6 and 7, 1977 interviews.

As to the other two interviews, in February and October of 1978, the government already has provided defendant with copies of the formal interview reports prepared therefrom. Defendant has made no showing that the law of this Circuit compels imposition of sanctions for destruction of any rough notes used to prepare such written interview reports where, at this pre-trial stage, it has not even been established that the government intends to offer in evidence at trial the substance of any such oral statements by defendant. The trial court remains free under Rule 16(d)(2) to bar introduction of such statement or enter such order as it deems just under the particular circumstance of the case, guided by *Kaplan v. United States*, 375 F.2d 895 (9th Cir. 1967), *cert. denied*, 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967).

We hold that the district court erred in dismissing the action under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and we reverse on that ground. The case is remanded for further proceedings consistent with this Opinion.

REVERSED AND REMANDED.