**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis Leo LEHMAN,
Defendant-Appellant.**

No. 83–3062.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1984.

Decided March 28, 1985.

William Hogan, Sally Gustafson, Asst. U.S. Attys., Seattle, Wash., for plaintiff-appellee.

Allen Bentley, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Before FLETCHER and FARRIS, Circuit Judges, and JAMESON,* District Judge.

PER CURIAM:

Lehman was convicted of aiding and abetting the commission of a bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(d), based on his involvement in a bank robbery carried out by Crenshaw and Gordon. The government's theory at trial was that Lehman had planned the robbery and had flown Gordon and Crenshaw in a small plane from Belfair, Washington, where the robbery took place, to Sacramento, California. Lehman's first conviction was reversed by this court, because of the trial court's denial of a defense request for a writ to secure the presence of a witness. *United States v. Crenshaw*, 698 F.2d 1060 (9th Cir.1983). At his second trial, a jury found him guilty and the court sentenced him to the maximum penalty, 25 years and a $10,000 fine.

Lehman appeals his convictions on four grounds. We affirm in part, but remand to the district court for a hearing on the limited question of whether the government violated the principles of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to provide Lehman with certain reports that he requested.

1. *Right to Counsel.*

Before trial, Lehman was in a federal penitentiary in California serving a sentence on another offense. This court's mandate, requiring a retrial, was filed on March 9, 1983. The next day the district court set April 28 as the deadline for making pretrial motions and May 16 as the trial date. Despite defense counsel's prompting, the government did not institute proceedings for a writ to obtain Lehman's presence for trial until April 28. The writ was granted on May 3, and Lehman arrived in Washington on the evening of Wednesday, May 11. A hearing on motions was held on Friday, May 13, and trial began the following Monday, May 16.

Before trial Lehman moved to dismiss the indictment on the ground that the government's delay in procuring his presence denied him effective assistance of counsel. He also moved for a continuance in order to prepare for trial. After trial, Lehman moved for a new trial on ineffective assistance grounds. The district court denied all these motions, indicating that the government's delay had caused no prejudice, because defense counsel had represented Lehman in the first trial and was very familiar with the case.

■ Although the government should have brought the defendant to Washington sooner,[1] there was no sixth amendment violation in this case. Defense counsel had represented Lehman in his first trial and on appeal, and was quite familiar with the case. He had ample opportunity for discovery prior to the first trial, and obviously did a substantial amount of preparation before Lehman arrived in Washington. Moreover, defense counsel performed very capably at Lehman's second trial. We cannot conclude either that the quality of de-

---

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The Speedy Trial Act provides:

 If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly

 (A) undertake to obtain the presence of the prisoner for trial. . . .

 18 U.S.C. § 3161(j)(1)(A). Although the statute does not define "promptly," the legislative history indicates that Congress intended it to mean "immediately" or as "soon . . . as is practicable." Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* 192 (1980). The Act, however, does not provide a remedy for the government's conduct in this case. In cases involving a first trial, the government's unreasonable delay could subject it to monetary sanctions under section 3162(b)(4) for "willfully fail[ing] to proceed to trial without justification." *See* Partridge at 193. Because the Act's time limits do not apply until the defendant has appeared, a delay in obtaining the defendant would result in a delay in trying him. *Id.* In a case of retrial such as this, however, the Act's time limits begin to run from the date of the court of appeals' mandate requiring retrial. 18 U.S.C. § 3161(e). The government's delay did not interfere with Lehman's right to a speedy trial even though its failure to act promptly violated section 3161(j).

fense counsel's representation of Lehman fell below an objective standard of reasonableness, or that there is a reasonable probability that it changed the outcome of Lehman's trial. *See Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984).

■ Lehman also claims that the trial court's refusal to grant a continuance denied his counsel adequate time to prepare and thus violated Lehman's sixth amendment rights. In such cases the trial court's denial of a continuance can be reversed only for a "clear abuse of discretion," and only if the defendant can demonstrate "actual prejudice." *United States v. Maybusher*, 735 F.2d 366, 369–70 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). Lehman has failed to make either of these showings.

## 2. *Estoppel.*

■ Lehman contends that the government should have been estopped from cross-examining Mr. McInturff, his alibi witness. Prior to Lehman's trial, the government had used McInturff's statement that he was with Lehman on the day of the robbery as a basis for obtaining the revocation of McInturff's parole, since it helped to establish that he had associated with an ex-convict. Lehman relies on the principle of "judicial estoppel," which holds that a party who has prevailed on a certain position in one proceeding may not advocate a contrary position in another proceeding. *See, e.g., Scarano v. Central Railway Co.*, 203 F.2d 510 (3d Cir.1953) (railroad worker who successfully sued employer alleging permanent disability from accident could not later sue for reinstatement).

We need not decide whether judicial estoppel is ever available against the government in a criminal case. Even assuming that it is, the government's position at Lehman's trial regarding his meeting with McInturff was not inconsistent with its position at McInturff's parole revocation proceeding. At the revocation proceeding, the government asserted that "on or about September 2, 1980," the day of the Belfair

bank robbery, McInturff had associated with Lehman. During cross-examination of McInturff at Lehman's trial, the government merely challenged McInturff's memory regarding the precise timing of his alleged meeting with Lehman, in order to demonstrate that the two men had not been together at the time the robbery and getaway took place. Lehman could have participated in the Belfair robbery and still associated with McInturff on or about September 2, so the government did not advocate mutually exclusive positions. As a result, Lehman's estoppel argument must fail.

## 3. *Admissibility of Evidence.*

■ At trial, Lehman's counsel attempted, unsuccessfully, to present evidence that Gordon and Crenshaw were parolees whose parole could have been revoked for associating with Lehman (an ex-convict), as well as evidence that McInturff's parole had been revoked for that reason. When the police found Lehman with Gordon and Crenshaw in Sacramento following the robbery, he denied knowing each of them; the government argued at trial that Lehman made these false statements to conceal his involvement in the bank robbery. Lehman's counsel wanted to introduce the evidence concerning Gordon's and Crenshaw's parole status so he could argue that a possible explanation for Lehman's false statements was that he wanted to protect these men from having their parole revoked.

The district court ruled that this evidence was irrelevant and likely to mislead the jury. These rulings by the trial court must be sustained absent an abuse of discretion. *United States v. Rubio*, 727 F.2d 786, 798 (9th Cir.1983); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir.), *cert. denied*, 454 U.S. 830, 847, 102 S.Ct. 125, 165, 70 L.Ed.2d 106, 135 (1981). Although we question whether the proferred evidence was wholly irrelevant or would have been misleading, at best it was only marginally relevant to a possible argument that defense counsel might make concerning a possible motive to explain away Lehman's lies. We find no abuse of discretion.

### 4. Discovery of Reports on Location of Footprints.

Through discovery, the defense obtained copies of photographs of footprints at the airport taken by the local sheriff's office on the day of the robbery. These photographs were not introduced at the second trial, but government witness Mandeville testified that he observed footprints leading to the area where private planes were tethered. This information supported the government's contention that Gordon and Crenshaw had gone to Lehman's plane after the robbery, rather than to a car waiting in the parking lot.

Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure requires the government to produce documents material to the defense upon request. In a pretrial discovery motion, the defense requested the government to produce any report in its possession concerning the location where the photographs were taken. The defense hoped that such a report might be inconsistent with Mandeville's testimony. The court did not rule on the motion at that time. During trial, the defense raised the issue again and asked that it be allowed to have a hearing on whether the government possessed such reports. The court denied this request, suggesting that counsel should have finished discovery before the first trial. Lehman requests this court to remand for a hearing to determine whether the government has such a report, and if so, whether it contains exculpatory material that the government should have produced under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

 When faced with a request for specific evidence that is material to the issue of the defendant's guilt,[2] the prosecution has a duty either to produce the evidence or submit it to the court for determination as to whether it must be produced. *See United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976); *United States v. Goldberg,* 582 F.2d 483, 488 (9th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979). As far as the record shows, the government neither produced the report requested by Lehman nor denied that it had such a report. Were Lehman able to show that the government had such a report and that it contained exculpatory information, this would be reversible error unless harmless. *See United States v. Goldberg,* 582 F.2d at 488–89. The prosecution's failure to respond to Lehman's discovery request, and the district court's refusal to order it to do so, make it impossible for Lehman to make such a showing. Under these circumstances, remand for a hearing as to the existence and contents of such a report is appropriate. *See United States v. Sternstein,* 596 F.2d 528, 531 (2d Cir.1979) (remand to district court for examination of reports to determine whether they contain material exculpatory evidence and, if so, to order a new trial).

Therefore, we remand to the district court to conduct a hearing to determine whether the government failed to disclose any reports that would have satisfied Leh-

---

**2.** This court distinguishes between cases where defendants have made *specific* requests for *Brady* material and cases where they have made only *general Brady* requests or *no* requests at all. *See United States v. Agurs,* 427 U.S. 97, 106–07, 96 S.Ct. 2392, 2398–99, 49 L.Ed.2d 342 (1976); *United States v. Goldberg,* 582 F.2d 483, 488–89 (9th Cir.1978); *United States v. Griffin,* 659 F.2d 932, 935–36 (9th Cir.1981). In cases where the defendant has made a *specific Brady* request and the government has failed to disclose the materials requested, a *Brady* violation has occurred whenever "there is a 'reasonable possibility' that the [government's nondisclosure] materially affected the verdict." This "reasonable possibility" standard is equivalent to the "harmless beyond a reasonable doubt" standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *United States v. Goldberg,* 582 F.2d at 489. In contrast, when the defendant has made only a *general Brady* request or *no Brady* request at all, this court has held that a *Brady* violation has occurred only if the evidence that the government has failed to disclose is "of a kind that 'creates a reasonable doubt that would not otherwise exist'": this requires that "the likelihood that the undisclosed evidence would have resulted in acquittal must be *more than a reasonable possibility* but need not be probable." *Id.* (quoting *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2401) (emphasis added).

man's request. If it did, we direct the district court to examine those reports and to determine whether there is a "reasonable possibility" that the government's failure to disclose them materially affected the verdict. *United States v. Goldberg*, 582 F.2d at 489. This will require the district court to determine whether the government's nondisclosure was harmless beyond a reasonable doubt. *Id.*

If the district court determines that the government failed to disclose any reports in its possession that would have satisfied Lehman's discovery request, and that their contents could have materially affected the verdict, the district court should enter findings to that effect and order a new trial. If the district court concludes otherwise, it should transmit written findings to this court for its further consideration. *See United States v. Sternstein*, 596 F.2d at 531.

AFFIRMED in part and REMANDED in part.

FARRIS, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's resolution of the right to counsel, estoppel, and admissibility of evidence issues. I disagree that Lehman has shown that the government's refusal to disclose any reports on the location of the footprint photographs amounted to a *Brady* violation. I therefore respectfully dissent from the majority's decision to remand this issue.

Initially, the defendant based his need for the reports on the inconsistencies in deputy sheriff Mandeville's testimony as to where the muddy footprints trailed off. At Lehman's first trial, Mandeville testified that the footprints led all the way to the runway. At the second trial, he testified that the footprints led to the taxiway. He explained, however, that he had only recently learned the difference in terminology and was not changing the substance of his testimony. Mandeville's testimony was consistent throughout the trials and this militates against the defendant's asserted need for the documents to impeach Mandeville's allegedly inconsistent testimony.

More fundamentally, a constitutional error for failure to disclose *Brady* material is committed only when there is a reasonable possibility that the non-disclosed evidence materially affected the outcome of the trial. *United States v. Goldberg*, 582 F.2d 483, 488 (9th Cir.1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979). Non-disclosure of evidence must, therefore, be evaluated in the context of the entire record. *See, e.g., United States v. Van Brandy*, 726 F.2d 548, 552 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 139, 83 L.Ed.2d 79 (1984); *see also United States v. Griffin*, 659 F.2d 932, 939 (9th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2019, 72 L.Ed.2d 473 (1982). Viewing the record as a whole, the photograph reports, if they exist, do not satisfy this standard. There is therefore no *Brady* violation.

Mandeville only testified that the footprints led past a set of hangars and toward the area in which the private planes were tethered. The jury could, but need not, infer from this that the two bank robbers actually proceeded on to Lehman's plane. Co-defendant Gordon testified that he and Crenshaw turned off at the hangars toward a car in the parking lot. Mandeville was cross-examined on this point as well as his testimony concerning where the footprints led. The jury had ample opportunity to question both the import and veracity of Mandeville's testimony. Any reports on the location of the footprint photographs would have been merely cumulative or collateral and their non-disclosure, if error, was harmless. *See United States v. Shelton*, 588 F.2d 1242, 1248 (9th Cir.1978) (evidence requested to impeach key government witness who has been extensively cross-examined is cumulative and thus not material), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979).

Further, the photograph reports, if they exist, are not material to the question of Lehman's guilt. Mandeville testified that he arrived at the airport shortly after the

two bank robbers were spotted, followed some footprints that led toward the airport—the defendant does not contest this—and saw a plane fitting the description of Lehman's take off. The area around the airport was subjected to an extensive search that failed to produce any sign of the robbers. Subsequently, Lehman was found in Sacramento, California in the company of one of the robbers. The other robber was apprehended later that evening at the Sacramento Airport. Lehman's plane was also found at the Sacramento Airport. Because of this undisputed evidence, I must conclude that there is no reasonable possibility that reports on the location of the footprint photographs would have affected the outcome.

I would affirm the district court's ruling on this point.