**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dennis Leo LEHMAN,**
**Defendant-Appellant.**

No. 85–3081.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1986.

Decided June 20, 1986.

Sally Gustafson, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Allen Bentley, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Before DUNIWAY, WRIGHT, and ANDERSON, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellant Lehman has twice been convicted of piloting the getaway plane for a Washington bank robbery. He argues that an FBI report describing the general location of the bank robbers' muddy footprints at the airport was *Brady* material that the government improperly failed to disclose upon request. The district court found that the government should have disclosed the report, but that its failure to do so was harmless error. We affirm.

## FACTS

On September 2, 1980, Crenshaw and Gordon robbed the Belfair branch of the Puget Sound National Bank. They then drove north to the Kitsap County Airport, parked their car along the highway, ran down a muddy embankment onto the asphalt near the airport hangars and disappeared. A small aircraft matching the description of Lehman's plane soon took off in a southerly direction. Lehman had previously been convicted of piloting the getaway plane in several bank robberies.

Two weeks later, FBI officials found Lehman and Gordon together in Sacramento. They arrested Crenshaw at the Sacramento airport that evening. They also found Lehman's plane there. Lehman was subsequently charged with aiding and abetting the bank robbery by piloting the getaway plane.

At trial, Gordon testified that he and Crenshaw had indeed robbed the bank, abandoned their car by the highway and run across the dirt embankment onto the asphalt surrounding the Kitsap County Airport hangar area. He stated, however, that after entering the hangar area, they turned north towards the terminal. There, they allegedly met a woman in a car who drove them to Sacramento where they met Lehman.

This testimony conflicted with that of Sheriff's Deputy Mandeville, who, on the day of the robbery, arrived at the airport shortly after witnesses saw the two bank robbers run into the hangar area. He followed the robbers' muddy footprints and testified that they went straight through the hangars and then faded away as they approached the eastern end of the hangar area where private planes waited before takeoff.

Lehman was convicted of aiding and abetting the robbery and sentenced to the maximum penalty of 25 years in prison and a $10,000 fine. On appeal, we reversed his conviction on the grounds that the trial court had improperly denied a defense request for a writ to secure the presence of a witness. *United States v. Crenshaw*, 9

Cir., 1983, 698 F.2d 1060. On retrial, Lehman was again convicted and sentenced to the maximum penalty.

At the second trial, defense counsel filed a discovery request for any reports concerning where in the airport certain close up photographs of the muddy footprints were taken.[1] The government did not find anything in its files containing this information. The court denied Lehman's motion that it hold a hearing on whether the government possessed the requested material.

After a second appeal, we remanded to the district court, directing it to conduct a hearing to determine whether the government failed to disclose any reports that would have satisfied Lehman's request. *United States v. Lehman*, 9 Cir., 1985, 756 F.2d 725, 729–30. If it found that the government had failed to disclose the requested material, the court was then to determine whether there was a reasonable possibility that the nondisclosure materially affected the verdict. *Id.* at 730.

The district court held the remand hearing on June 6, 1985. By this time, the FBI had discovered in its files a report noting its receipt of the footprint photographs. The part of the report relevant to Lehman's discovery request reads, in its entirety:

> These photographs were taken on a dirt embankment leading from the highway to the asphalt and hangar area at the Kitsap County Airport and of footprints appearing on the asphalt surface surrounding the hangar area of the Kitsap County Airport just south of the terminal area.

The district court assumed that the report was *Brady* material, but held that because there was no reasonable possibility that the government's failure to disclose the report materially affected the verdict, the government's nondisclosure was harmless beyond a reasonable doubt. The hearing transcript shows that the judge believed that the report was immaterial because the government had never argued

that Lehman was one of those who made the footprints.

## STANDARD OF REVIEW

■ In *Brady v. Maryland*, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment...." *Id.* at 87, 83 S.Ct. at 1196. Suppression of such evidence requires reversal where there is any reasonable possibility that the suppressed evidence would have materially affected the verdict. *United States v. Goldberg*, 9 Cir., 1978, 582 F.2d 483, 488–89. We review these questions of law *de novo*, *In re McLinn*, 9 Cir., 1984, 739 F.2d 1395, 1398, and may affirm the district court on any ground supported by the record. *Islamic Republic of Iran v. Boeing Co.*, 9 Cir., 1985, 771 F.2d 1279, 1288.

## DISCUSSION

■ The district court erred in finding that the report was immaterial to the government's case against Lehman. The government argued that the two robbers had run straight through the hangar area to Lehman's waiting plane. The defense countered with Gordon's testimony that he and Crenshaw had entered the hangar area then turned north to meet a waiting getaway car. Any report concerning the muddy footprints was thus potentially relevant and material to the case against Lehman regardless of the fact that he was not one of the persons who made the prints.

■ Nonetheless, we affirm the district court. Even assuming that the report is within *Brady*'s definition of "favorable" and "material" evidence, a dubious proposition, there is no reasonable possibility that the government's failure to disclose the report materially affected the verdict. The report states only that the footprint photographs were taken on the asphalt of the hangar area south of the airport terminal. It simply does not say, as Lehman implies,

---

1. The government had provided the photographs to the defense at the first trial, but apparently neither side used them then or at the later trial.

that the photos were taken just south of the terminal in an area where a car might have been waiting for the robbers. In fact, the report only restates facts that the parties do not dispute, *i.e.* that muddy footprints were found somewhere in the hangar area. As a result, the government's nondisclosure of the report did not deny Lehman evidence that he could have used to discredit the government's evidence regarding the footprints' trail through the hangar area.

■ Contrary to Lehman's claim, it is also not significant that the report contains so little information about precisely where the footprints were located and where they led. The report's only purpose was to record the FBI's receipt of close up photographs of muddy footprints. There was no reason for it to include any additional information and its failure to do so does not support Lehman's theory that law enforcement officials deliberately omitted information that contradicted their case against Lehman. The nondisclosure of the report did not, therefore, adversely affect Lehman's cross-examination of Officer Mandeville regarding the trail of footprints through the airport and did not materially affect the verdict.

AFFIRMED.