OPINION
AMBRO, Circuit Judge.
Robert Morton appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). He challenges his New Jersey conviction for murder and robbery, claiming that the State violated his due process rights by (1) denying him access to the original recordings of his taped confessions, and (2) allowing the *183 prosecutor to state during summation that such access had been granted. We affirm.
I.
On the night of February 23, 1993, Robert Morton set out with Alonzo Bryant to rob citizens at knifepoint. Donning green latex gloves, the pair first assaulted Toby Chrostowsld in a Burlington, New Jersey, parking lot. They next attacked Michael Eck, a gas station attendant in Delran, New Jersey, stabbing him 24 times. During the attack, Morton’s knife folded back on him, slicing his finger. See State v. Morton, 155 N.J. 383, 715 A.2d 228, 238 (1998). Eck called 9-1-1 for help, but later died. See id.
The police caught Morton after he sought medical treatment for his finger. Waiving his Miranda rights, Morton first denied his involvement in Eck’s murder, but then told police: “I was there with Alonzo in Delran when he did what he did.” Id. He agreed to give a taped statement, in which he admitted being present during Eck’s attack, but identified Bryant as the only attacker. After reviewing this statement, however, he told the police, “[t]his is not coming out right.” Id. at 239.
Morton then gave a second tape-recorded statement. In- this statement, he described stabbing Eck, see App. at 44 (“Alonzo was there before me.... [He] stabbed him.... I was stabbin’ the man too.”), and stated that he was guilty. See id. at 45.
Two days after Morton gave his statements, a police officer found two green latex gloves near where Eck was stabbed. DNA from blood on the outside of the gloves matched Eck’s. DNA from a slit on the finger of one of the gloves matched Moi'ton’s. See Morton, 715 A.2d at 240.
Before trial, the State provided Morton with transcripts of his statements and copies of the audio tapes. Morton moved for production of the original tapes to test their authenticity, alleging that “the tapes [we]re not accurate.” Id. at 242. The trial court denied this request as “solely a fishing expedition.” Id.
Morton then moved to suppress the tapes. He claimed that “the first tape omitted some of his answers and included others that he had not given,” and he alleged that the second tape “was a completed fabrication.” Id. The trial court denied Morton’s motion, finding “no rational basis for considering that the tapes have been altered or tampered with, [and] no question [that] the voice is that of Morton.” App. at 59.
During the guilt phase of Morton’s trial, the State admitted the tapes into evidence. Defense counsel responded by telling the jury that “audio tapes can be edited and tampered with,” and emphasizing that the tapes were redacted. Id. at 288. The State objected, and the Court allowed it during summation “to argue that defendant could have obtained the tapes ... by submitting sufficient facts to establish ‘a rational basis for ... testing.’ ” Morton, 715 A.2d at 242. The prosecutor went beyond what the Court permitted, however, stating that Morton “had every bit as much opportunity as the prosecution did to present evidence, conduct any inspections, or do any examinations of the tapes.... ” App. at 296. The Court opted not to give a curative instruction.
The jury convicted Morton of murder and sentenced him to death. Morton, 715 A.2d at 241. Morton appealed to the New Jersey Supreme Court, which affirmed his conviction and death sentence. See id.; State v. Morton, 165 N.J. 235, 757 A.2d 184 (2000). The United States Supreme Court denied certiorari. See Morton v. New Jer *184 sey, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001).
Morton filed his first petition for post-conviction relief in the Superior Court of New Jersey in 2001. See State v. Morton, No. 93-09-0492-1, at 8 (N.J.Super., Law Div., June 28, 2005). It set aside his capital sentence and resentenced him to life imprisonment. Morton then petitioned for a writ of habeas corpus in the District Court. See Morton v. Ricci, No. 06-2711, 2008 WL 508479, at *1 (D.N.J. Feb.20, 2008). He argued that he was denied a fair trial “when the trial court refused [him] ... access to the original tapes ... but permitted the prosecutor to argue ... that [he] could have had the tapes tested.” Id. He also claimed that “the introduction into evidence of the tape and transcript of the victim’s 9-1-1 call denied [him] due process and a fair tidal.” Id.
The District Court denied Morton relief under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), 28 U.S.C. § 2254. It held that: (1) Morton was not entitled to test the original tapes; (2) the prosecutor’s remarks did not deprive Morton of a fair trial; and (3) introduction of the 9-1-1 call did not deny Morton due process. See id. at *9-10. Morton sought and received a certificate of appealability from this Court on the issues noted below.
II.
The District Court exercised jurisdiction under 28 U.S.C. § 2254. We have jurisdiction to review the District Court’s order denying the petition for a writ of habeas corpus under 28 U.S.C. §§ 1291 and 2253.
Because the District Court denied the petition without conducting an evidentiary hearing, our review is plenary. See Fahy v. Horn, 516 F.3d 169, 179 (3d Cir.2008). We may grant a writ of habeas corpus only if the State court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d).
III.
We granted Morton a certificate of ap-pealability to consider whether: (1) the prosecution denied Morton due process when it refused to make the original audio tapes available for testing; and (2) the prosecutor’s misleading statement regarding the availability of the original audio tapes to the defense rendered the entire trial unfair. See App. at 24. We answer no to each question, and thus affirm the denial of a writ of habeas corpus.
A.
Morton claims that the New Jersey Supreme Court’s ruling that he was not entitled to the original audio tapes was contrary to the holding of Brady v. Maryland that “the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. ...” 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He is wrong.
“To establish a Brady violation requiring relief, a defendant must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material.” Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir.2004). The New Jersey Supreme Court focused on the second prong in rejecting Morton’s claim:
Defendant argues that, by refusing to turn over the original tapes, the prose *185 cution violated Brady. Brady’s focus, however, is on the nondisclosure of exculpatory evidence, not on challenges to the evidence’s authenticity. See Brady, 373 U.S. at 87, 83 S.Ct. 1194.... [Neither of these confessions [was] exculpatory. ... Defendant’s argument, that the original tapes, if altered, would constitute exculpatory evidence under Brady, is too attenuated. His challenge is directed at the authenticity, not the disclosure of evidence. As such, defendant must provide more than mere unfounded allegations of tampering to compel the prosecutor to turn over the original tapes for testing.
Morion, 715 A.2d at 243. This analysis was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).
Mere speculation that suppressed evidence might favor the defense is insufficient to trigger a Brady violation. The Supreme Court in Wood v. Bartholomew, 516 U.S. 1, 6-7, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995), stated that a Brady violation did not occur where “information, had it been disclosed to the defense, might have led [defendant]^ counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized.” We have been even more direct:
[T]he mere possibility that [suppressed evidence] might have included Brady material, without more, is insufficient to implicate such concerns. We think it unwise to infer the existence of Brady material based upon speculation alone. Instead, we favor the approach ... that “unless [a] defendant is able to raise at least a colorable claim that the [suppressed evidence] contained evidence favorable to him and material to his claim of innocence or to the applicable punishment[,] ... no constitutional error or violation of due process will have been established.”
United States v. Ramos, 27 F.3d 65, 71 (3d Cir.1994) (quoting United States v. Griffin, 659 F.2d 932, 939 (9th Cir.1981)). Thus, the New Jersey Supreme Court did not act contrary to clearly established federal law by deciding that Morton’s mere speculation on the authenticity of the tapes failed to give rise to a Brady violation.
B.
Morton’s second claim stems from his allegation that he was denied due process when the trial court permitted the prosecutor’s misstatements about Morton’s ability to test the original tapes. This claim also fails.
In Darden v. Wainwright, 477 U.S. 168, 181-82, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Supreme Court explained that, to render a trial unfair, “it is not enough that the prosecutors’ remarks were undesirable or even universally condemned.... The relevant question is whether the prosecutors’ comments ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ” 477 U.S. at 181, 106 S.Ct. 2464 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). “[T]he reviewing court must examine the prosecutor’s offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant.” Moore v. Morton, 255 F.3d 95, 107 (3d Cir.2001).
In weighing Morton’s prosecutorial misconduct claim, the New Jersey Supreme Court considered the severity of the prosecutor’s “incomplete and inaccurate” remarks, the logic behind the trial court’s denial of a curative instruction, and the weight of the evidence against Morton. *186 See Morton, 715 A.2d at 246-47. It thus sufficiently followed Darden and Moore, and was not contrary to clearly established federal law.
* * * * * *
For these reasons, we affirm the judgment of the District Court denying Morton’s petition for a writ of habeas corpus.