UNITED STATES of America,
Plaintiff–Appellee,

v.

Robinson RAMIREZ and Nicolas Farias Sanchez, Defendants–Appellants.

No. 90–2525.

United States Court of Appeals,
Fifth Circuit.

Feb. 19, 1992.

Thomas S. Berg, Marjorie A. Meyers, Asst. Federal Public Defenders, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for Ramirez.

David E. Roberts, Larry M. Lee, Visalia, Cal., James L. Turner, Paula C. Offenhauser, Asst. U.S. Attys., Houston, Tex., for Sanchez.

Before REYNALDO G. GARZA, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Ramirez appeals his conviction of possession with intent to distribute cocaine. Appellant Sanchez seeks review of his conviction of money laundering and also appeals his sentence of 324 months for conspiracy, possession with the intent to distribute cocaine, and money laundering. We affirm the conviction of Ramirez, reverse the money laundering conviction of Sanchez, and remand for resentencing.

I. *Background*

Drug Enforcement agents arrested Appellants Ramirez and Sanchez, along with several other defendants, in November 1989 at the culmination of an investigation that was aided in large part by a government informant, Robert Bryant. Bryant associated with a drug import organization headed by William Tucker, Tucker's daughter Delores Erazo, and her husband Jairo Erazo. On the night the arrests occurred, Delores and Jairo Erazo met Bryant in the parking lot of a Houston service station where they instructed him to wait for a van. Soon after the meeting, two men, one of whom was Appellant Sanchez, arrived in a car. Sanchez accompanied Bryant to a house located at 5403 Arizona where Sanchez and two other men loaded two boxes, containing 250 kilograms of cocaine, into Bryant's van. The cocaine was wrapped in football-sized brown packages, each weighing a kilogram.

Delores Erazo then directed Bryant to a restaurant parking lot where he was to meet another man with whom he should switch cars. At the appointed parking lot Bryant met Appellant Ramirez. Bryant recognized Ramirez from an earlier encounter at Tucker's house where Bryant had seen Jairo Erazo give Ramirez a package.

When Bryant asked Tucker about the incident, Tucker responded, "There goes seventy to seventy-five-thousand dollars.... There goes the stuff up your nose."

In the restaurant parking lot, Bryant asked Ramirez to make sure all of the "stuff" was there so that Jairo would not be angry. Ramirez looked into the van, opened the flap of one of the boxes, and glanced at its contents. Bryant and Ramirez then exchanged keys. When Ramirez attempted to start the van, he was arrested by agents who had been surveying the scene. The agents arrested Tucker and the Erazos shortly thereafter, and executed a search warrant on the house at 5403 Arizona. There they seized, among other things, a rifle and a box containing $132,980. Sanchez, who was present at the house, was arrested incident to the search.

## II. *Ramirez's Appeal*

Ramirez's appeal is threefold. First he contends that the district court erred by trying him ahead of Delores Erazo, who, Ramirez claims, would have been willing to testify in his favor had she not risked incriminating herself before her own trial. Second, Ramirez argues that the district court should have stricken the testimony of informant Bryant because Bryant destroyed his notes before trial in violation of a court order. Finally, he asserts that the evidence introduced by the Government is insufficient to support the jury's guilty verdict.

### A. Severance and Order of Trials

Ramirez moved to sever his trial from that of Delores Erazo, stating that Delores's attorney had advised Ramirez's counsel that Delores "were she called to testify in a separate trial in which her guilt were not an issue, would state that Mr. Ramirez was sent on an errand in her employ and that he had neither knowledge of the purported negotiations nor of the contents of the package contained in the boxes in the van." The motion stated that Delores Erazo was the only available source of this information.

The district court granted Ramirez's motion for severance, but tried him ahead of Delores. After the jury found Ramirez guilty, he moved for a new trial on the ground that the court's failure to try Delores first deprived him of material exculpatory evidence. The court denied this motion and later denied Ramirez's request to reconsider. In his motion to reconsider the motion for new trial, Ramirez included an unsworn statement of Delores describing Ramirez's innocent involvement in the crime and indicating her willingness to testify in his behalf. Delores, by this time, had reached a plea agreement with the Government. On appeal, Ramirez attacks the court's decision to try him ahead of Delores, the court's denial of a new trial, and its refusal to reconsider its rulings.

Ramirez argues that by trying him ahead of Delores and thereby thwarting the purpose of his severance, the court de facto denied his request to sever his trial from Delores's. *See United States v. DiBernardo*, 880 F.2d 1216, 1227 (11th Cir.1989). The Government asserts that the court granted severance because the Government was not prepared to try all of the co-defendants together. Both theories require us to treat the court's action as a denial of Ramirez's severance request.

A movant seeking severance must demonstrate: 1) a bona fide need for the testimony, 2) the substance of the desired testimony, 3) its exculpatory nature and effect, and 4) the willingness of the co-defendant to testify at a separate trial. *United States v. Rice*, 550 F.2d 1364, 1369 (5th Cir.), *cert. denied*, 434 U.S. 954, 98 S.Ct. 478, 479, 54 L.Ed.2d 312 (1977). After such a showing, the court must consider: 1) the significance of the alleged exculpatory testimony in relation to the defendant's theory of defense, 2) the extent to which the defendant might be prejudiced by the absence of the testimony, 3) judicial administration and economy, and 4) the timeliness of the motion. *United States v. Butler*, 611 F.2d 1066, 1071 (5th Cir.), *cert. denied*, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980). We review the district court's decision to grant or deny severance

for an abuse of discretion. *United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 228, 229, 98 L.Ed.2d 187 (1987).

The Government does not dispute that Ramirez was in need of the alleged exculpatory evidence. Rather, it argues that Ramirez failed to show the district court both the substance of the testimony, and Delores's willingness to testify. We agree. Ramirez's motion for severance rested on an alleged agreement between counsel for Delores and counsel for Ramirez. It did not contain an affidavit from Delores herself. At the pretrial hearing, Delores's lawyer significantly undercut the persuasiveness of Ramirez's motion by stating that he could not assure the court that his client would testify to the extent that Ramirez had suggested. Also facing the court at the pretrial hearing, as an alternative to the postponement of Ramirez's trial, was the chance that the Government might grant Delores use immunity for her testimony. Confronted with this alternative and the uncertainty of Delores's testimony, the district court did not err in favoring the judicial economy of trying Ramirez first.

■ Similarly, the motion for new trial lacked any assurances that Delores would testify to the extent described by Ramirez. Though the chance that Delores might receive immunity no longer existed when Ramirez moved for a new trial, the court was within its discretion in denying the motion based on the uncertainty of the proposed testimony.

■ Ramirez's motion to reconsider was untimely filed, coming as it did, more than ten days after the court had denied Ramirez's new trial motion. *See United States v. Cook*, 670 F.2d 46, 47 (5th Cir.), *cert. denied*, 456 U.S. 982, 102 S.Ct. 2255, 72 L.Ed.2d 860 (1982). We have, on occasion, construed belated challenges to sentences filed pursuant to Rule 35 of the Federal Rules of Criminal Procedure as requests for relief under 28 U.S.C. § 2255. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir.1983) (*pro se* litigant's "ill styled Rule 35 pleading" examined under section 2255). We do not believe the facts of this

case warrant our extending *Santora*'s rationale to untimely motions to reconsider new trial motions. Our decision, however, does not bar Ramirez from raising his claim in a separate section 2255 proceeding.

**B. Bryant's Testimony**

■ Prior to trial, the district court ordered the Government to preserve the rough notes of its agents. In violation of this order, Bryant, after preparing a summary of his notes, destroyed the scraps that made up his rough notes. Ramirez contends that this action violates the Jencks Act, 18 U.S.C. § 3500. The Jencks Act requires that after a Government witness has testified, the Government must produce any "statement" of the witness that the Government possesses. *Id.* § 3500(b). The statute defines "statement" in relevant part as "a written statement made by said witness and signed or otherwise adopted or approved by him." *Id.* § 3500(e)(1).

The notes destroyed by Bryant consisted of odd pieces of paper on which Bryant jotted down names, addresses, and license plate numbers. We find that the scattered notes taken by Bryant over the course of the investigation do not fit within the Act's purview. *See United States v. Roemer*, 703 F.2d 805, 807 (5th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983); *Needelman v. United States*, 261 F.2d 802, 806 (5th Cir.1958), *cert. dismissed*, 362 U.S. 600, 80 S.Ct. 960, 4 L.Ed.2d 980 (1960). The district court, therefore, was not obligated to prohibit Bryant's testimony, as it would have been had the Act applied.

■ Nonetheless, Bryant's destruction of his notes was a violation of the court's discovery order and subject to the provisions of Rule 16 of the Federal Rules of Criminal Procedure. The court, in its discretion, could have prohibited disclosure of the information destroyed by Bryant. Considerations such as why the notes were destroyed, the prejudice to Ramirez, and other circumstances all are relevant to the court's decision. *United States v. Sarci-*

*nelli,* 667 F.2d 5, 6–7 (5th Cir.1982). Bryant destroyed his rough notes because he thought them unnecessary once he had summarized them. The information contained in them was available to Ramirez in other forms, such as the summary and the DEA's report. The prejudice Ramirez suffered, if any, from the note's destruction, therefore, was minimal. The district court's decision to permit Bryant to testify was well within its discretion.

### C. Sufficiency of the Evidence

■ We must affirm Ramirez's conviction if the evidence, viewed in the light most favorable to the verdict, with all reasonable inferences and credibility choices made in support of it, is such that any rational trier of fact could have found the essential elements of his crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Kim,* 884 F.2d 189, 192 (5th Cir.1989). In making this determination, we need not exclude every reasonable hypothesis of innocence. *United States v. Henry,* 849 F.2d 1534, 1536 (5th Cir.1988). Juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *United States v. Cruz–Valdez,* 773 F.2d 1541, 1546–47 (11th Cir.1985) (en banc), *cert. denied,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

■ The jury found Ramirez guilty of possession with the intent to distribute cocaine and aiding and abetting the distribution of cocaine. To prove possession, a violation of 21 U.S.C. § 841(a)(1), the Government must show, 1) knowing 2) possession 3) with intent to distribute. *United States v. Anchondo–Sandoval,* 910 F.2d 1234, 1236 (5th Cir.1990). To prove aiding and abetting, a violation of 18 U.S.C. § 2, the Government must show that Ramirez 1) associated with the criminal venture 2) participated in the venture, and 3) sought by action to make the venture succeed. *United States v. Roberts,* 913 F.2d 211, 217

(5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2264, 114 L.Ed.2d 716 (1991). We find that the Government presented sufficient evidence to support both guilty verdicts.

Ramirez alleges that he was hired by Delores Erazo to make deliveries for her legitimate businesses. The circumstances surrounding Bryant and Ramirez's meeting, however, could indicate otherwise. The men met in a random parking lot where Ramirez inspected the contents of Bryant's van. Ramirez was then willing to trade cars with Bryant—a man with whom he was barely acquainted. Moreover, Bryant's observation of Ramirez's earlier encounter with Jairo Erazo casts doubt on Ramirez's claim that he was engaged in Delores Erazo's legitimate business deliveries. Viewed together, the two incidents entitled the jury to reject Ramirez's explanation of his possession of the van. The jury's inference that Ramirez knew that the van contained cocaine was not unreasonable.

### III. *Sanchez's Appeal*

#### A. Money Laundering

■ The jury found Sanchez guilty, among other things, of money laundering, a violation of 18 U.S.C. § 1956. To prove money laundering, the Government must show that the defendant 1) conducted or attempted to conduct a financial transaction, 2) which the defendant knew involved the proceeds of unlawful activity, 3) with the intent to promote or further unlawful activity. 18 U.S.C. § 1956(a)(1); *United States v. Munoz–Romo,* 947 F.2d 170, 178 (5th Cir.1991). The statute defines "financial transaction" as a transaction "(i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, which in any way or degree affects interstate or foreign commerce." 18 U.S.C. § 1956(c)(4)(A). The term "transaction" means "a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition." *Id.* § 1956(c)(3).

The Government's evidence against Sanchez tends to show that Sanchez was part of a drug trafficking ring. From this, the jury could infer that the money found at

5403 Arizona represented proceeds from illegal activity. The Government, however, failed to show Sanchez's involvement in a financial transaction involving the proceeds. The agents found the money secreted in a shoe box in a closet of a house belonging to Sanchez's brother. Assuming that this evidence establishes Sanchez's actual or constructive possession of the funds, it does not allow the inference that Sanchez transferred, delivered, moved, or otherwise disposed of the money as required by statute. We therefore reverse Sanchez's conviction of money laundering.

Sanchez's money laundering conviction carried a 240–month sentence. For each of the other counts, Sanchez received 324–month sentences. All three were to run concurrently. Sanchez's penalty so exceeded those of the other defendants that the sentencing judge described it as "excessive." The judge, however, believed that a downward departure from the sentence was impermissible "considering the facts of the case and the circumstances." By reversing Sanchez's money laundering conviction, we have altered the circumstances considerably. We therefore must allow the judge to reevaluate Sanchez's punishment in light of the reversal.

Accordingly, we REVERSE Sanchez's money laundering conviction, and REMAND his case for resentencing. The conviction of Appellant Ramirez is AFFIRMED.