**UNITED STATES of America,**

v.

**Herman M. MELO, Jr., Defendant.**

**No. CRIM.2005–10115–JLT.**

United States District Court,
D. Massachusetts.

Jan. 19, 2006.

Lisa M. Asiaf, United States Attorney's Office, Organized Crime Drug Task Force, Boston, MA, Neil J. Gallagher, Jr., United States Attorney's Office, Boston, MA, for USA, Plaintiff.

Catherine K. Byrne, Federal Defender's Office, District of Massachusetts, Boston, MA, for Herman M. Melo, Jr. (8), Defendant.

---

## *MEMORANDUM AND ORDER ON DE-FENDANT'S REQUEST FOR PRO-DUCTION AND INSPECTION OF NOTES TAKEN BY GOVERN-MENT AGENTS DURING SUR-VEILLANCE AND INVESTIGA-TION OF DEFENDANT (# 35)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

This case raises the issue as to whether an agent's rough handwritten notes taken while conducting surveillance during an investigation of the defendant are subject to production to defendant's counsel pursuant to the provisions of the Jencks Act, 18 U.S.C. § 3500 and the Federal Rules of Criminal Procedure. The issue arose at the defendant's detention hearing before me. Rule 26.2, Fed.R.Crim.P., deals with production of such material in general. Rule 26.2(g)(4), Fed.R.Crim.P., makes the provisions of the rule specifically applicable to detention hearings.

What the Court must decide in the instant case is whether the agent's rough notes are "statements" as that term is defined almost identically both by statute (18 U.S.C. § 3500(e)(1)) and by Rule 26.2(f)(1), Fed.R.Crim.P. The statute provides, in pertinent part:

The term "statement" . . . in relation to any witness called by the United States, means -

(1) a written statement made by said witness and signed or otherwise adopted or approved by him.

Rule 26.2(f), Fed.R.Crim.P., provides, in pertinent part:

"Statement" Defined. As used in this rule, a witness's "statement" means:

(1) a written statement that the witness makes and signs, or otherwise adopts or approves.

It is important to make three points at the outset. First, in deciding whether the agent's notes are producible, the Court is not dealing with that portion of the statute and rules dealing with "oral statements" set forth in 18 U.S.C. § 3500(e)(2) and Rule 26.2(f)(2), Fed.R.Crim.P. As the facts of the instant case, recited *infra*, demonstrate, there is no claim that the notes are recordings of any oral statements by the agent. The agent was not talking to himself and writing down what he said when he made the notes.

Second, the only issue which the Court is considering is whether the notes are subject to production as Jencks Act material. If the notes are inconsistent with the agent's testimony at trial, they are producible as exculpatory evidence regardless of whether or not they might be producible under the Jencks Act. *United States v. Neal*, 36 F.3d 1190, 1196 n. 3 (1 Cir., 1994), *cert. denied sub nom. Kenney v. United States*, 519 U.S. 1012, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996). The United States Attorney is under an obligation to review the notes before trial and be prepared to produce them at trial if they are inconsistent with the agent's trial testimony.

Third, the Court is not dealing with whether or not the Government must preserve the notes. The Local Rules make is abundantly clear that notes such as are at issue in the instant case must be preserved regardless of whether or not they are producible under any theory. Local Rule 116.9(A) (D.Mass.).

### II. The Facts

In April 2004, the U.S. Drug Enforcement Administration ("DEA") commenced an investigation; that investigation resulted in criminal charges being brought against defendant Herman Melo, among others. By February 9, 2005, DEA Agents had purchased heroin from the defendants a total of fourteen times. DEA Special Agent Daniel Forde ("Agent Forde"), the case agent, participated in

nine of the undercover purchases as one of the surveillance agents.

In an Affidavit, Agent Forde wrote [1] that during surveillance, he "...took handwritten notes regarding various observations that [he] made concerning the defendants and the properties used by the defendants." # 37, Exh. A, p. 1. He further states that the notes:

> ...consist of 31 sets of handwritten notes, which relate to 31 occasions on which I conducted surveillance in this investigation.[2] The reason that I took these notes was to memorialize my observations during surveillance for purposes of drafting "DEA-6" surveillance reports.[3] I did not sign or otherwise approve any of these handwritten notes. The only personal information included on these notes appears on the first page only, where I wrote my name and/or "call sign" or initials for the sole purpose of identifying that I was the author of these notes.

# 37, Exh. A, p. 2.

At a hearing on April 21, 2005, Agent Forde testified in more detail respecting the taking of the notes. The notes were written in his handwriting, they were usually dated, no one else but him wrote the notes, and they were written contemporaneously with observations he was making in an official government vehicle while on surveillance. The notes do not contain every detail of the observations he made.

He stated that he put his name, initials or call sign on the notes so that they could be identified as his notes and attributed to him.

Agent Forde asserted that the notes were taken to record the time of events observed and what was observed. He referred to the notes when writing the DEA-6 reports and used them to refresh his recollection during that process. However, the DEA-6 reports contain matters which were not in the notes but which were observed on surveillance. The preparation of the DEA-6 reports could be done on the day of surveillance or up to three weeks thereafter. Some of his notes were not included in DEA-6 reports which he prepared but were included in DEA-6 reports which other DEA agents prepared. The DEA-6 reports are meant to be the complete account of what was observed during surveillance.

He used the notes to prepare the Affidavit in support of the Criminal Complaint which was filed in this case; he did not put anything in his notes which was untrue. When the DEA-6 reports are completed, the notes are placed in the case file.

### III. Applying the Facts to the Law

In *Jencks v. United States*, 353 U.S. 657, 668, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), the Supreme Court held that:

> We now hold that the [defendant] was entitled to an order directing the Gov-

---

1. The Affidavit was written by the Assistant U.S. Attorney with input from Agent Forde; Agent Forde signed the Affidavit.

2. Agent Forde also testified on April 21, 2005 that one of the sets of notes was not of surveillance but rather contained notes regarding the debriefing of a confidential informant. These notes are not an issue since Agent Forde did not testify respecting the debriefing of this confidential informant.

3. Agent Forde further testified on April 21, 2005 that the notes also include observations made by other surveillance agents which were communicated to him by way of radio transmissions or by telephone during the surveillance. Frankly, the Court cannot recall whether Agent Forde testified concerning these observations by other agents at the detention hearing. However, no evidence was adduced at the hearing that Agent Forde took down a "substantially verbatim recital" of what the other agents said which would render the notes producible pursuant to 18 U.S.C. § 3500(e)(2) and Rule 26.2(f)(2), Fed. R.Crim.P.

ernment to produce for inspection all reports of [the witnesses] in its possession, written and, when orally made, as recorded by the F.B.I., touching the events and activities as to which they testified at the trial.

In response to what was perceived as an expansive and unwarranted interpretation of the Court's holding, the so-called Jencks Act was enacted into law on September 2, 1957. The Senate Report which accompanied the bill succinctly stated the purpose of the legislation which notes, in pertinent part:

> The bill, therefore, may be briefly described as designed to preserve the rights of any defendant under due process of law and to make certain that the decision in the Jencks case is not to be interpreted by courts, lawyers, or defendants as exposing Government files in a manner which the Supreme Court, in *Gordon v. United States,* (344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447) called "any broad or blind fishing expedition among documents possessed by the Government on the chance that something impeaching might turn up." This language from *Gordon v. United States,* was quoted with approval on page 10 of the opinion in the Jencks case as printed and handed down on June 3, 1957.

> In other words, it is the specific intent of the bill to provide for the production only of written statements previously made by a Government witness in the possession of the United States which are signed by him or otherwise adopted or approved by him...relating to the matter as to which the witness has testified. The committee rejects, therefore, any interpretations of the Jencks decision which would provide for the production of entire investigative files, grand jury testimony, or similar materials.

U.S.Code Congressional and Administrative News (85th Cong., 1st Sess.) Vol. 2 at 1862.

Accordingly, the defendant is entitled to Agent Forde's rough notes only if, in the words of Rule 26.2(f)(1), Fed.R.Crim.P., they constitute "a written statement that the witness makes and signs, or otherwise adopts or approves." There is no question that Agent Forde "made" the writings in the sense that he wrote them. They are, therefore, "a written statement that the witness makes..". What is in issue is whether he signed them or otherwise approved or adopted them.

First, the Court finds that Agent Forde did not "sign" them in the sense that the term is used in the statute and rule. "Signing" as used in this instance means putting a signature or other mark on the notes so as to attest to their accuracy and to intend to be accountable in a formal manner for their contents. The Court credits Agent Forde's testimony that he put his initials, name or call sign on the notes to identify them as his notes. Putting such marks on a document which one has written is not "signing" them in the sense used in the statute and rule.

The next issue is whether the notes were "approved" or "adopted" by Agent Forde. These terms, in essence, connote the same thing as "signing." The question is whether the record indicates that Agent Forde has verified, vouched for, and indicated that he intends to be accountable for the content of the notes. *United States v. Gotchis,* 803 F.2d 74, 77–78 (2 Cir., 1986).

This analysis gets somewhat tricky. Agent Forde testified (and the Court credits his testimony) that the purpose of making the notes was to document the "correct" time, the "correct" activity which occurred, and by whom it was observed. Further, he testified that he sought to get as much specific information in the notes

as possible so he could write his DEA–6 reports. In addition, he testified that he put nothing in the notes which he did not believe to be true and that to his knowledge, there are no errors ("nothing wrong") in the notes. Lastly, he testified that the notes were incomplete in the sense that the DEA–6 reports contain matters which were observed but not recorded in the notes. Does this mean that he has verified and vouched for the contents of the notes or that he intends to be accountable for the content of the notes? If so, does this make them "statements" as defined.

In reviewing the caselaw, it is important to determine whose "statement" is being requested. If an agent takes rough notes during the interview of a witness, it is clear in this Circuit that the notes do not become the "statement" of the witness unless the witness adopts or approves the agent's notes. That is to say, the rough notes are not a "statement" of the witness "unless the evidence shows that the witness adopted the notes, a phenomenon that would occur, for example, if 'the interviewer read the statement back to the witness and...the witness approved the statement.'" *United States v. Marrero–Ortiz,* 160 F.3d 768, 775–6 (1 Cir., 1998) *quoting from United States v. Gonzalez–Sanchez,* 825 F.2d 572, 586 (1 Cir.), *cert. denied sub nom. Latorre v. United States,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). *See also Campbell v. United States,* 373 U.S. 487, 492–93, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963).

However, would the agent's rough notes of a witness interview be the agent's own "statement"—that is, a "statement" made by the agent himself? The caselaw indicates that they would not under § 3500(e)(1). As the Second Circuit has noted, "[a]bsent any indication that an FBI agent signs, adopts, vouches for, or intends to be accountable for the contents of the notes, the rough notes taken in a witness interview cannot be considered the agent's statement." *United States v. Scotti,* 47 F.3d 1237, 1249 (2nd Cir.1995) *citing Gotchis,* 803 F.2d at 77–78.

There is another aspect to the problem which has been recognized mostly in those cases dealing with whether or not an agent must preserve rough notes after he has incorporated the information contained in them into a more formal report. Although there are differences as to the duty of preservation,[4] the majority of courts have held that rough notes taken by an agent are not Jencks material because they are not meant to be adopted or approved by the agent as a "statement".[5] An explication of this analysis is found in the case of *United States v. Hinton,* 719 F.2d 711 (4 Cir., 1983), *cert. denied,* 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 699 (1984) in which the Court notes that the courts following the majority rule

> ...conclude that "rough notes" or "jottings" "not intended as a final report" made during an investigation by a government agent to "serve only a limited and temporary purpose" of providing a "guide" for the agent's subsequent formal interview report, [quotations from *United States v. Comulada,* 340 F.2d 449, 451 (2nd Cir.1965) ] in "transferring

---

**4.** In *United States v. Lieberman,* 608 F.2d 889, 897 n. 13 (1 Cir., 1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980), the First Circuit declined to decide whether an agent is under a duty to preserve rough notes. So far as the Court's research reveals, the First Circuit, since 1979, has not decided whether such a duty exists.

**5.** In the case of *United States v. Mannarino,* 850 F.Supp. 57, 63 n. 28 (D.Mass., 1994), Judge Woodlock acknowledges that the "majority rule" is that "absent special circumstances", "...when an agent destroys rough notes which form the basis of a final report, those notes do not fall within the Jencks Act."

the information [on the notes]" to other data and "not intended as a final report," [quotations from *United States v. Kaiser*, 660 F.2d 724, 731–32 (9th Cir. 1981), *cert. denied*, 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674] lack that element of finality and completeness required to meet the test of an "approved" statement of the agent under the precise and circumscribed definition stated in the Act.

*Hinton*, 719 F.2d at 717–18.

The cases dealing with whether an agent's rough notes while on surveillance are "statements" within the definition found in § 3500(e)(1) have uniformly found that the notes are not "statements" based largely on the analysis cited, *supra*, in the *Hinton* case. Thus, in the case of *United States v. Bernard*, 623 F.2d 551, 558 (9 Cir., 1979), the Court wrote that "...rough notes of an agent's surveillance activities are often sketchy and incomplete, made in a hurry, at different times, and will include the agent's own impressions and conclusions. When his written report is prepared, additional material may be included." The court in the *Bernard* case followed a decision by the Tenth Circuit, *United States v. Lane*, 574 F.2d 1019, 1022 (10 Cir.), *cert. denied*, 439 U.S. 867, 99 S.Ct. 193, 58 L.Ed.2d 177 (1978), which held that notes taken by an agent while acting in an undercover capacity were not producible under § 3500(e)(1).

The Ninth Circuit has uniformly followed its holding in the *Bernard* case. In *United States v. Andersson*, 813 F.2d 1450 (9 Cir., 1987), an agent on surveillance "took four pages of notes" containing some of the observations which the agent made. The court, citing *Bernard*, stated flatly that "an agent's rough notes taken during the course of surveillance need not be preserved or produced." *Andersson*, 813 F.2d at 1459 citing *Bernard*, 623 F.2d at 557–58 (other citation omitted). *See also*

*United States v. Griffin*, 659 F.2d 932, 938 n. 4. (9 Cir., 1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2019, 72 L.Ed.2d 473 (1982); *United States v. Spencer*, 618 F.2d 605, 606 (9 Cir., 1980).

In fact, the Ninth Circuit has applied the rationale in the *Andersson* case to a situation in which a tape recording was made of transmissions from a border patrol officer on surveillance noting his observations. *United States v. Bobadilla–Lopez*, 954 F.2d 519, 520–23 (9 Cir., 1992), *cert. denied*, 506 U.S. 1056, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993). While the recordings could have been deemed to have been statements under § 3500(e)(2) ("...recording...which is a substantially verbatim recital of an oral statement made by [the] witness and recorded contemporaneously with the making of such oral statement"), the Court held otherwise, writing that:

Both the history of the statute and the decisions interpreting it have stressed that for production to be required, the materials should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context. For example, the Supreme Court in *Palermo v. United States*, 360 U.S. 343, 352, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959), stated that "the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital." Because the drafters did not intend to grant access to materials which take a witness' words out of context, courts have considered the nature and completeness of the alleged "statement." Thus in *United States v. Bernard*, 623 F.2d 551, 557–58 (9th Cir.1979), we held that an agent's rough notes jotted during surveillance were not producible under the Jencks Act due to the incom-

plete nature of the notes. We noted that "rough notes of an agent's surveillance activities are often sketchy and incomplete, made in a hurry, at different times, and will include the agent's own impressions and conclusions." *Id.* at 558...

*Bobadilla–Lopez*, 954 F.2d at 522. *See also United States v. Alvarez*, 86 F.3d 901, 905–6 (9 Cir., 1996), *cert. denied*, 519 U.S. 1082, 117 S.Ct. 748, 136 L.Ed.2d 686 (1997).

Lastly, as recently as a little over two years ago, the Ninth Circuit reaffirmed its position that "...the Jencks Act does not apply to rough notes of an agent's surveillance activities" citing *Bobadilla–Lopez*. *United States v. Arnett*, 84 Fed.Appx. 939, 943, 2003 WL 23095754 *3 (9 Cir., 2003), *cert. denied*, 541 U.S. 1091, 124 S.Ct. 2828, 159 L.Ed.2d 256 (2004).

Caselaw is other circuits does not materially differ from the Ninth Circuit's jurisprudence on the issue. In *United States v. Ramos*, 27 F.3d 65 (3 Cir., 1994), two police officers working with the DEA took notes during the their initial debriefings of cooperating witnesses who later testified at trial. *Ramos*, 27 F.3d at 67. After the officers prepared summary reports in the form of DEA–6s, they destroyed the notes. *Id.* The Court held that the rough notes "fall into neither...categor[y]" of 18 U.S.C. § 3500(e)(1)(2) and noted that "...unlike the DEA–6s themselves, they do not constitute writings which the officers later adopted in any way." *Ramos*, 27 F.3d at 70 *citing Griffin*, 659 F.2d at 937–8.[6]

In the Fifth Circuit, the issue has been framed as whether or not the notes can be deemed to be a "statement", and the Court indicated that "...the roughness of the notes may be relevant to a finding that they were not adopted by the author as a statement." *United States v. Roemer*, 703 F.2d 805, 807 (5 Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983) *citing United States v. Surface*, 624 F.2d 23, 26 (5 Cir., 1980) and *United States v. Jiminez*, 484 F.2d 91, 92 (5th Cir.1973). Later, in the case of *United States v. Ramirez*, 954 F.2d 1035 (5 Cir.), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3010, 120 L.Ed.2d 884 (1992), the Court held that notes consisting of "...odd pieces of paper on which [the agent] jotted down names, addresses and license plate numbers" did not "fit within the [Jencks] Act purview." *Ramirez*, 954 F.2d at 1038 *citing Roemer*, 703 F.2d at 807 and *Needelman v. United States*, 261 F.2d 802, 806 (5 Cir., 1958), *cert. dismissed*, 362 U.S. 600, 80 S.Ct. 960, 4 L.Ed.2d 980 (1960). To the same effect are *United States v. Mora*, 994 F.2d 1129, 1139 (5 Cir.), *cert. denied sub nom. Medina v. United States*, 510 U.S. 958, 114 S.Ct. 417, 126 L.Ed.2d 363 (1993) and *United States v. Ridlehuber*, 11 F.3d 516, 525 (5 Cir., 1993).

The Tenth Circuit's decision in *Lane*, 574 F.2d 1019, is in a somewhat different category. It did not deal with the question of whether the notes were Jencks Act material. In *Lane*, the notes were those of an undercover agent, and the issue was whether they had to be preserved. The Court noted that because of that fact, the notes "concerned the undercover agent's activities", and were "not written contemporaneously but hours, even days, later", and "[t]he very existence of such notes

---

6. *United States v. Walden,* 465 F.Supp. 255 (E.D.Pa., 1978), *aff'd,* 590 F.2d 85, *cert. denied,* 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979) illustrates the manner in which a rough draft (as opposed to notes) can be said to have been "approved" or "adopted" by the writer. In that case, the writer sent the drafts to his supervisor for review prior to the report being put in final form. The Court held that this action constituted a "approval" and "adoption" of the rough draft by the writer.

constitutes a real hazard to the undercover agent." The Court, disagreeing with contrary decisions of the Ninth and D.C. Circuits,[7] held that "it would be a judicial invasion into proper law enforcement to require the preservation of such notes..." *Lane*, 574 F.2d at 1022.

In *United States v. Soto*, 711 F.2d 1558 (11 Cir., 1983), the Eleventh Circuit wrote that "[n]o decision of this circuit or the former Fifth Circuit indicates that either rough notes or the rough draft of a report prepared by a government agent become Jencks Act material merely because the agent uses them to prepare his final report. Indeed, the case law is directly contrary to such a proposition." *Soto*, 711 F.2d at 1562 (citations omitted). To the same effect is *United States v. Mena*, 863 F.2d 1522, 1529 (11 Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 109, 110, 107 L.Ed.2d 72 (1989).

The bottom line is that with respect to rough notes taken during surveillance, the fact that the agent testifies that he took accurate notes and did not put anything in the notes which was not true does not mean that the agent "adopted" or "approved" the notes as a "statement" as that term has been limned by the cases. In the words of the Ninth Circuit, even though the circuit has a rule requiring that rough notes be preserved:

> [S]ome of the notes which must be preserved...will not be statements. This occurs when the notes are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigators' selections, interpretations, and interpolations. The Congressional policy behind the Jencks Act was to protect witnesses from being impeached with words that are not their own, or are an incomplete version of their testimony.

*United States v. Spencer*, 618 F.2d 605, 606 (9 Cir., 1980) *citing Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), *United States v. Augenblick*, 393 U.S. 348, 354–356, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) and *Wilke v. United States*, 422 F.2d 1298, 1299 (9 Cir., 1970).

Agent Forde's notes in the instant case fall within that category. The Court further observes that counsel for the defendant has found no case in which a court has ordered disclosure of an agent's rough surveillance notes as Jencks Act material.

Lastly, the Court sees no need for an *in camera* inspection if it can be determined from other evidence that the notes are not Jencks Act material. *See United States v. Boyd*, 53 F.3d 631, 634 (4 Cir.), *cert. denied*, 516 U.S. 924, 116 S.Ct. 322, 133 L.Ed.2d 223 (1995) (citations omitted). In the instant case, Agent Forde testified extensively about how the notes were prepared and why they were prepared. He was thoroughly cross-examined. In these circumstances, there is no doubt that the notes are of the type which are not "statements" within the meaning of the Jencks Act. There was no need for an *in camera* inspection.

### IV. Conclusion and Order

Accordingly, it is ORDERED that the Request for Production and Inspection of Notes Taken by Government Agents during Surveillance and Investigation of Defendant (# 35) be, and the same hereby is, DENIED.

---

7. *United States v. Harris*, 543 F.2d 1247 (9 Cir., 1976); *United States v. Harrison*, 524 F.2d 421 (D.C.Cir., 1975).