# United States Court of Appeals
## For the First Circuit

No. 06-2550

UNITED STATES OF AMERICA,

Appellee,

v.

EDWIN COLÓN-DÍAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella and Howard, Circuit Judges,
and Smith,* District Judge.

Rafael F. Castro-Lang, for appellant.
Dina Ávila, Assistant United States Attorney, with whom
Rosa E. Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa,
Assistant United States Attorney, Chief, Appellate Division, and
Germán A. Rieckehoff, Assistant United States Attorney, were on
brief, for appellee.

March 26, 2008

---

* Of the District of Rhode Island, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  A jury convicted Edwin Colón-Díaz ("Colón") on five counts of drug offenses under 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2.  He appeals these convictions, claiming that the district court committed a number of errors that, in the aggregate, constituted reversible error under the cumulative error doctrine articulated in United States v. Sepúlveda, 15 F.3d 1161, 1196 (1st Cir. 1993).  After thoroughly reviewing the record and considering the parties' arguments, we affirm Colón's convictions.

## I.  Background

We consider only those facts relevant to Colón's arguments on appeal, relating them "as the jury could have found them, drawing all inferences in the light most consistent with the jury's verdict."  United States v. Milkiewicz, 470 F.3d 390, 392 (1st Cir. 2006).  Colón lived in Building 47 of the Vista Hermosa housing project in San Juan, Puerto Rico, where he ran a small grocery store.  The Drug Enforcement Administration ("DEA") assembled a task force to investigate Colón as the suspected owner of a drug-selling location in front of Building 47 known as the "yellow point" for the yellow markings on the packaging in which certain drugs were sold.  In particular, crack cocaine was sold in small plastic vials sealed with yellow caps.  These vials of crack were called "yellow caps."

As part of the investigation, the DEA sent an informant, Wanda Romero, to the yellow point to buy yellow caps. The seller at the yellow point on this occasion was José Otero-Cruz ("Otero"), alias "Bebo," Colón's stepson. Romero and Otero had a conversation in which Otero informed her that he had yellow caps belonging to Colón, and Romero returned later with DEA-furnished money and bought the yellow caps from Otero. Again on DEA instructions, Romero went to the yellow point with Puerto Rico police officer and undercover DEA task-force member Janet López; Romero and López had a hidden audio-recording device. This time, the seller was Víctor Díaz, alias "Ne," who sold Romero and López drugs. Colón's name was not mentioned during this transaction.

Over the course of the investigation, federal agents gathered a considerable quantum of additional evidence that would later be presented at trial, including: (1) a video showing Colón in close proximity to the yellow point; (2) witnesses who said they saw Colón near the yellow point and that Colón appeared concerned with the goings-on there; (3) the testimony of Colón's friend and fellow drug trafficker, Jesús Rivera-Santiago ("Rivera"), that Colón owned the yellow point; (4) the testimony of Colón's coconspirator Rafael Soto-Torres ("Soto") that Colón owned the yellow point and that Soto sold drugs at the yellow point on behalf of Colón; (5) evidence that a search of Colón's store turned up police scanners and surveillance cameras that were located both

inside and outside the store, but no food or other goods on the shelves; (6) evidence that a search of an apartment belonging to Colón yielded a large amount of drugs, drug paraphernalia, cash, a cash counting machine, a police scanner, and some weapons; and (7) that Colón had made down payments of thousands of dollars on a number of expensive homes, sometimes in cash, even though he only registered a monthly income of $100.

Colón was eventually arrested and charged with conspiracy to possess with intent to distribute heroin, cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and with aiding and abetting the possession with intent to distribute heroin, cocaine, cocaine base, and marijuana within 1,000 feet of an elementary school or park, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A jury convicted Colón on all counts, and the district court sentenced him to twenty years' imprisonment. On appeal, Colón challenges a number of evidentiary rulings made at trial. He also complains of the Government's alleged destruction of certain "rough notes" taken during several interviews with a government informant who testified at trial. We detail these challenges, and the trial procedure giving rise to them, in the relevant parts of the discussion that follows.

## II. Discussion

Colón argues that three sets of purported errors, taken together, justify reversal of his convictions under the cumulative

error doctrine.  See Sepúlveda, 15 F.3d at 1196.  None of his arguments withstands scrutiny.  We consider them in turn.

**A.    Limiting Instructions for the Romero, López, and Pérez Testimony Naming Colón as the Yellow Point's Owner**

Colón's first assignment of error is that three government witnesses -- Romero, López, and DEA task force member Pedro Pérez -- gave highly prejudicial hearsay testimony naming him as the yellow point's owner, and that the district court's limiting instructions to the jury failed to cure the infirmity.  Evidentiary rulings, including whether to admit evidence over a hearsay objection, are ordinarily reviewed for abuse of discretion.  See United States v. García, 452 F.3d 36, 38 (1st Cir. 2006); United States v. Washington, 434 F.3d 7, 14 (1st Cir. 2006).  However, we review Colón's challenge to the Romero, López, and Pérez limiting instructions only for plain error because Colón did not object to them when they were given at trial.  See United States v. Marino, 277 F.3d 11, 28 (1st Cir. 2002); see also United States v. de la Cruz-Paulino, 61 F.3d 986, 996 (1st Cir. 1995) ("The 'plain error' standard requires the reviewing court to ask: (1) whether there is an error; (2) whether the error is 'plain,' a term synonymous with 'clear' or 'obvious'; and (3) whether the error affected substantial rights." (quoting United States v. Olano, 507 U.S. 725, 734 (1993))).

While an out-of-court statement may be hearsay if offered to prove the truth of the matter asserted, it is nonhearsay if

offered for some other purpose, including when offered "only for context." United States v. Bailey, 270 F.3d 83, 87 (1st Cir. 2001) (internal quotation marks omitted). Where a given statement potentially qualifies as both hearsay and nonhearsay, the district court may admit it if it is relevant, and if the probative value of its intended nonhearsay use is not substantially outweighed by the risk of the jury considering it for the truth of the matter asserted. See Fed. R. Evid. 403; see also United States v. Mazza, 792 F.2d 1210, 1215 (1st Cir. 1986). If so requested by a party, however, the district court must instruct the jury not to consider the statement for its truth. See United States v. Linwood, 142 F.3d 418, 425 (7th Cir. 1998) (citing Fed. R. Evid. 105).

After reviewing the record, it is clear that the district court adopted the proper procedure with respect to the impugned Romero and López testimony. Romero testified that federal agents asked her to go and purchase drugs from "[Colón]'s yellow point." Colón timely objected that this statement was hearsay and requested a limiting instruction. The district court instructed the jury as follows:

> [Y]ou may not take that answer for its veracity, that it was [Colón]'s yellow point. You can only consider that answer for the fact that those were the instructions provided to . . . the witness [Romero]. But, again, you may not take that, that it was [Colón]'s yellow point, for the veracity that in fact that was [Colón]'s yellow point.

Colón explicitly approved of this instruction in advance during a sidebar conference, and did not object when the court announced it to the jury.

For her part, López testified regarding what she and her supervisor said to Romero before proceeding to the yellow point to purchase drugs from Víctor Díaz: "[A]fter going over the job that was going to be carried out, we told [Romero] that we were going to go over to the housing project to buy drugs at a point of somebody called [Colón]." Colón again objected on hearsay grounds, and the district court instructed the jury as follows: "The Court instructs the jury that they are not to take that into consideration, other than they were told that it was [Colón], period. Not to take it for the truth, but that was the instruction that was provided to them." Colón did not object to this instruction.

Both these pieces of testimony lent themselves to at least two nonhearsay purposes: they described directions from one person to another, and they demonstrated why Romero -- accompanied by López the second time -- went to the yellow point. See Bailey, 270 F.3d at 87 ("directions from one individual to another . . . do not constitute hearsay," and nonhearsay includes statements "'offered to . . . supply a motive for the listener's action'" (citing United States v. Murphy, 193 F.3d 1, 6 n.2 (1st Cir. 1999))). On Colón's request, the court issued unequivocal

instructions that the jury was not to consider the evidence as proof that Colón was the yellow point's owner.[1]  We find no plain error here.

Colón's challenge to the Pérez testimony is similarly fruitless.  Pérez testified that "on and off in the year 2002, the special investigation unit . . . targeted the . . . drug t[r]afficking organization led by Mr. Edwin Colón Díaz."  Like the Romero and López testimony, this testimony could readily be taken for a nonhearsay purpose:  it provided background and context for understanding the investigative steps of the task force, and an explanation for why the task force focused its efforts on Colón, as opposed to someone else.  See United States v. Castellini, 392 F.3d 35, 52 (1st Cir. 2004); see also United States v. Collins, 996 F.2d 950, 953 (8th Cir. 1993) (out-of-court statement "not hearsay if offered for the purpose of explaining why an investigation was undertaken").  Colón made a hearsay objection to the Pérez

---

[1]  At oral argument, Colón made much of the district court's wording of the first part of the López instruction, that the jury was "not to take that into consideration, other than they were told that it was [Colón], period."  Colón argued that, through these words, the court actually directed the jury to take the testimony as proof that Colón was indeed the owner of the yellow point.  This is a clear misreading of the instruction.  The district court instructed the jury only to consider the fact that López and her supervisor told Romero they were going to Colón's yellow point, not that the yellow point truly belonged to Colón.  In any event, the court immediately dispelled any possible confusion in the next sentence of the instruction.

testimony, and the district court issued an instruction to which Colón did not object:

> I am advising the jury that this is an investigation that [Pérez] undertook. It is not a statement for the truth. The only truth is that that was the investigation, but . . . whether or not the investigation is truthful or untruthful or correct or incorrect, that's the jury who will determine that.

This instruction expressly directed the jury not to consider whether the task force's focus on Colón as the leader of the organization was well placed. It was not plainly erroneous.

In sum, the district court committed no plain error in the procedure surrounding the admission of these three pieces of testimony, nor in its respective limiting instructions. We accordingly turn to Colón's next assignment of error.

## B. Alleged Hearsay Testimony that Colón Was the Provider of the Yellow Caps

Colón argues that Romero's testimony regarding her conversation with Otero the first time she went to buy drugs at the yellow point also contained damaging hearsay naming Colón as the yellow point's owner. The relevant portion of the trial transcript is as follows:

> Q. So after you see [Otero] with this bag of yellow cap crack, what did you ask him or what did you proceed to do with [Otero]?
>
> A. I asked him whether he could get me a package of those yellow caps.

Q. MR. BAUZÁ[2] [Counsel for Colón]: Objection, hearsay.

THE COURT: She's asking him. Up to now it's not hearsay.

. . .

Q. What was [Otero]'s response?

MR. BAUZÁ: Now, objection. . . . I have an objection, Your Honor, as to [Otero]'s response.

. . .

MR. GIL [Assistant U.S. Attorney]: Co-conspirator statement, it's an exception to the hearsay rule.

THE COURT: But let me see how it all comes out. . . .

. . .

Q. So how did [Otero] respond?

A. He asked me, "Do you want some of these yellow caps? Listen, I have them. These are the best and they're [Colón]'s."

. . .

Q. What did you ask . . . [Otero ?]

. . .

A. I told him that I needed some of those yellow caps that belonged to [Colón]. And he told me, look, I have them, look at the package. These are the best that come, and he had the yellow ones.

---

[2] Mr. Bauzá was Colón's counsel at trial and Mr. Castro-Lang was his counsel on appeal.

On appeal, Colón characterizes as impermissible hearsay Romero's testimony that she told Otero "she needed some of those yellow caps that belonged to [Colón]" ("Romero statement"); and her testimony on Otero's response:  "Do you want some of these yellow caps? . . . These are the best and they're [Colón]'s" ("Otero statement").

We begin by addressing Colón's challenge to the admission of the Otero statement.  Federal Rule of Evidence 801(d)(2)(E) classifies as nonhearsay those statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy." As nonhearsay, such statements, if admitted, may be considered for the truth of the matter asserted.  See Castellini, 392 F.3d at 50. To admit a coconspirator statement under Rule 801(d)(2)(E), four elements must be satisfied by a preponderance of the evidence. First, a conspiracy must have existed, and second, the defendant must have been a member of it.  United States v. Tom, 330 F.3d 83, 93 (1st Cir. 2003) (quoting United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980)).  Third, the declarant must also have been a member of the conspiracy.  Id.  Fourth, the declarant's statement must have been made in furtherance of the conspiracy. Id.[3]

---

[3]  It is immaterial that the other person in the conversation, Romero, was not a coconspirator but a government informant. Piper, 298 F.3d at 53 ("[S]tatements made [by a coconspirator declarant] in the course of a discussion between [him] and a third party who is a stranger to the conspiracy are admissible under Rule

-11-

In order to preserve an objection to the admission of a coconspirator statement under Rule 801(d)(2)(E), the defendant must ask the district court to make, at the close of the evidence, what is known as a Petrozziello determination.  See United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977).  There, the district court asks whether it is "'more likely than not that the declarant and the defendant were members of a conspiracy . . . and that the statement was in furtherance of the conspiracy.'" Castellini, 392 F.3d at 50 (quoting Petrozziello, 548 F.2d at 23).  To preserve a challenge to the result of this determination, the defendant must object.  See United States v. Flemmi, 402 F.3d 79, 94 (1st Cir. 2005).  Preserved challenges are reviewed for abuse of discretion. United States v. Rivera-Hernández, 497 F.3d 71, 82 (1st Cir. 2007). Unpreserved challenges are reviewed for plain error.  Flemmi, 402 F.3d at 94.

As the passage quoted above indicates, Colón objected anticipatorily to the Otero statement.  Although he did not give the reason for his objection, the Government assumed it was on hearsay grounds, and responded that the statement fell within the coconspirator exemption.  The district court allowed the testimony

801(d)(2)(E), provided that they meet the Rule's foundational requirements[,] . . . regardless of whether the third party is a tipster, an informant, an undercover officer, or a mere acquaintance.").

with a caveat: "Let's see how it all comes out." At the end of trial, the district court made the Petrozziello determination:

> [T]he United States has proven by a preponderance of the evidence that a conspiracy under the statutory violations set forth in Count 1 existed [that is, knowing and intentional possession with intent to distribute heroin, cocaine, cocaine base, and marijuana], that the declarants/coconspirators, Rafael Soto Torres, Wanda Romero, Ketsy Cardona, and Jesús Santiago Rivera's statements are declarations that are authorized and admissible pursuant to Federal Rule of Evidence 801(d)(2)(E).
>
> . . .
>
> Some of them were co-conspirator statements, classic co-conspirators, 801(d)(2)(E), others were statements that were attributed to the Defendant and the Court was satisfied . . . that the statements were made during the conspiracy and in furtherance of the conspiracy.

At this point, Colón requested the district court to reconsider the portion of the Petrozziello determination that deemed the Otero statement as having been made in furtherance of the conspiracy. He accepted, however, that the Otero statement was made during the conspiracy. After a lengthy explanation, the district court reaffirmed its ruling that the Otero statement was made in furtherance of the conspiracy because Otero "was trying to induce [Romero] to buy the best quality, which was the quality of the drugs which were owned by Edwin Colón." Colón made no further objection.

-13-

On appeal, Colón now challenges the entire Petrozziello determination. In making this determination, the district court found explicitly that the first element under Rule 801(d)(2)(E) had been fulfilled: a conspiracy existed as charged in the indictment. The court also found that certain purported hearsay statements during Romero's testimony were admissible under Rule 801(d)(2)(E); in rejecting Colón's request to reconsider, the court clarified that among these was the Otero statement. The district court then made an express finding that the Otero statement also satisfied the fourth Rule 801(d)(2)(E) element because it was made in furtherance of the conspiracy. Although the district court did not make explicit findings on the second and third elements -- that Colón and Otero were both members of the conspiracy -- such findings are clearly implied in the court's rulings on the first and fourth elements.

At trial, Colón only objected to the district court's ruling on the fourth element, and indeed appears to have accepted that the other Rule 801(d)(2)(E) requirements were fulfilled. We accordingly review the district court's finding on the fourth element for abuse of discretion, and the remainder of the Petrozziello determination for plain error. See Flemmi, 402 F.3d at 94.

The first, second, and fourth Rule 801(d)(2)(E) elements are easily satisfied, under either standard of review. At least a

-14-

preponderance of the evidence in the record, and most notably the testimony of Soto, shows that a conspiracy existed and that Colón was a member of it.  The district court also correctly determined that the fourth element was satisfied:  Otero's puffery about how the yellow caps were Colón's and were "the best" sought directly to promote the conspiracy's goal -- the sale of drugs -- and to engender confidence on the part of the buyer Romero.  See Piper, 298 F.3d at 54 (a statement is made "in furtherance of" a conspiracy if it "tends to advance the objects of the conspiracy as opposed to thwarting its purpose" (quoting United States v. Flores-Rivera, 56 F.3d 319, 330 (1st Cir. 1995))); cf. United States v. Roldán-Zapata, 916 F.2d 795, 803 (2d Cir. 1990) (statement made in furtherance of conspiracy where declarant told potential drug buyer defendant's role and identity to "reassur[e] him to proceed with the transaction in the presence of someone with whom he was not familiar"); United States v. McGuire, 608 F.2d 1028, 1032-33 (5th Cir. 1979) (statement made in furtherance of conspiracy where declarant told potential buyer that defendant's brother in Peru could get him cocaine, which amounted to "puffing" aimed at obtaining buyer's confidence).

With respect to the third element, we hold that the district court did not plainly err in finding Otero to be a member of the conspiracy.  Nonhearsay evidence presented at trial made it plausible that Otero was involved in the conspiracy to traffic

drugs.  Specifically, Romero testified that she personally observed Otero, a person she had known since childhood, selling crack cocaine at a location that, according to other witnesses including Soto and Rivera, was Colón's drug point.[4]  In this circuit, "[w]here the error defendant asserts on appeal depends upon a factual finding the defendant neglected to ask the district court to make, the error cannot be 'clear' or 'obvious' unless the <u>desired</u> factual finding is the only one rationally supported by the record below."  <u>De la Cruz-Paulino</u>, 61 F.3d at 996 (quoting <u>United States</u> v. <u>Olivier-Díaz</u>, 13 F.3d 1, 5 (1st Cir. 1993)).  Colón's desired factual finding, which he neglected to ask the district court to make, was that Otero was not a member of the conspiracy. As noted above, this is not the only finding rationally supported by the record below; Colón failed to produce any evidence to refute Otero's role in the conspiracy.  No plain error occurred here.

We now turn to Colón's challenge to the admission of the Romero statement.  We find his arguments unavailing because that statement constituted a "reciprocal and integrated utterance" that merely served to put the Otero statement "into perspective and make [it] intelligible to the jury."  <u>Id.</u> at n.8 (internal citations and quotation marks omitted).  Romero's request for "some of those yellow caps that belonged to [Colón]" gave context to Otero's

---

[4]     Otero was originally charged in the indictment as a coconspirator along with Colón, Soto, and others.  He subsequently pled guilty.  <u>Cf.</u> <u>de la Cruz-Paulino</u>, 61 F.3d at 996.

response that he had some of Colón's yellow caps to sell her. Furthermore, nothing in the Romero statement exposed the jury to any information not already contained in the Otero statement which, as determined above, was itself admissible under the coconspirator exemption in Rule 801(d)(2)(E). Cf. United States v. Zizzo, 120 F.3d 1338, 1348 (7th Cir. 1997) (no error to admit portions of nonconspirator declarant's conversations with defendant's coconspirators, where coconspirators' statements had been admitted under Rule 801(d)(2)(E), because nonconspirator's remarks "were not admitted for their truth but rather to give context to the conspirators' ends of the conversations"); United States v. Catano, 65 F.3d 219, 225 (1st Cir. 1995) (DEA informant's end of conversation with defendant not hearsay, where defendant's end of conversation admissible as nonhearsay admission of a party under Fed. R. Evid. 801(d)(2)(A), because informant's utterances were "reasonably required to place [defendant's] admissions into context" and "make them intelligible to the jury" (internal quotation marks omitted)); United States v. Walter, 434 F.3d 30, 34 (1st Cir. 2006) (same). In these circumstances, the Romero statement was not hearsay, and it was not error to admit it. See de la Cruz-Paulino, 61 F.3d at 996 n.8; Catano, 65 F.3d at 225.[5]

---

[5] In contrast to the testimony described earlier in this opinion, Colón did not request an instruction that the jury not consider the Romero statement for the truth of Colón's ownership of the yellow

We therefore turn to Colón's third and final assignment of error.

### C.  The Purported Jencks Act Violation

The Jencks Act obliges the Government to hand over, upon request, prior statements of a government witness relating to the witness's trial testimony, whether such statements are exculpatory or not.  See United States v. Rosario-Peralta, 175 F.3d 48, 53 (1st Cir. 1999) (citing 18 U.S.C. § 3500(b)).  A "statement" for purposes of the Jencks Act includes any written statement made, adopted, or approved by the witness.  18 U.S.C. § 3500(e).

Several months before trial, Colón sent the Government a letter requesting what he termed Jencks material:  "copies of any confessions and/or statements which may be of [an] incriminating nature to Defendant."  On cross-examination at trial, Romero testified that federal agents had interviewed her more than twenty times; in such interviews, an agent wrote down what Romero said, and Romero read what had been written and agreed with it.  The district court found that Romero had thereby adopted these "rough notes" -- thus making them producible under the Jencks Act -- and asked the Government if it had the notes.  The Government responded that it did not have them at trial that day, and Colón proceeded to cross-examine Romero without the rough notes, apparently reserving

---

caps.  The district court did not commit plain error in not giving such an instruction.  Cf. United States v. Tornabene, 687 F.2d 312, 317 (9th Cir. 1982); see also Fed. R. Evid. 105.

-18-

the right to ask more questions once the rough notes had been given to him.

Four days later, the Government announced that the rough notes no longer existed "because the agent at the time prepared the DEA-6 report and destroyed their notes. And they discussed with [Romero] the DEA-6 report, which she has."[6] In response to a question by the district court, the Government clarified that the rough notes had been destroyed. The district court did not inquire further, and counsel for Colón did not comment or raise an objection. In its brief, the Government asserts that what Romero actually adopted was the DEA-6 reports, not the rough notes, but at oral argument the Government recanted and submitted that Romero could not have adopted the DEA-6 reports either, because she does not understand English.[7] The Government argues that there are only two federal agents who interviewed Romero and could possibly have taken these notes. The first, Pedro Pérez, testified on cross-examination that, while he wrote up DEA-6 reports of the Romero interviews, he did not take any notes while interviewing her, and does not recall any other agents taking notes. The second agent,

---

[6] Although the Government here appears to be speaking of a single DEA-6 report, shortly thereafter it referred to the "6s," and other submissions and evidence in the record suggest that more than one DEA-6 report was created.

[7] We cannot examine the contents of the DEA-6 reports because they were not introduced at trial. See Rosario-Peralta, 175 F.3d at 56 (noting that a court cannot review evidence for first time on appeal).

-19-

Luis Batiz, testified prior to Romero and was not re-called by Colón to testify regarding the rough notes. The Government concludes that Romero was simply confused when she testified to having adopted notes taken during her interviews.

In order to prevail on an alleged violation of the Jencks Act, a defendant must show that he was prejudiced as a result of the Government's nondisclosure of a qualifying statement. United States v. Duval, 496 F.3d 64, 73 (1st Cir. 2007). Colón claims that he may well have suffered prejudice because, if the rough notes failed to reflect Romero's conversation with Otero in which Otero stated that the yellow caps were Colón's, Colón could have used the notes as a powerful tool to impeach Romero's credibility. Colón asserts that he is not blindly speculating that the Otero statement would be absent: the audio recording of Romero and López's subsequent trip to the yellow point reveals no mention of Colón's name; according to Colón, this suggests Romero was lying when she testified that Otero mentioned Colón's name.

While we ordinarily review determinations under the Jencks Act for abuse of discretion, Rosario-Peralta, 175 F.3d at 55, here we review for plain error because Colón failed to object at trial to the Government's nondisclosure of the rough notes. See United States v. Schier, 438 F.3d 1104, 1107 (11th Cir. 2006). Lacking sufficient information in the record, we are not in a position to determine a number of critical questions, including:

-20-

(1) whether there were any rough notes taken at all; (2) if so, whether Romero adopted them; and (3) whether the rough notes or the DEA-6 reports contained any mention of Otero telling Romero the yellow caps were Colón's.  When confronted with uncertainties of this type in the past, we have sometimes remanded the case to the district court to clarify the record.  See, e.g., Rosario-Peralta, 175 F.3d at 56-57; United States v. Neal, 36 F.3d 1190, 1199 (1st Cir. 1994); United States v. del Toro Soto, 676 F.2d 13, 16-17 (1st Cir. 1982).

Nevertheless, in light of other evidence presented at trial, and since the standard of review is plain error, we need not go so far.  Even assuming the rough notes or the DEA-6 reports made no mention of Otero's statement to Romero, there was a considerable amount of other evidence presented to the jury establishing Colón as the provider of drugs sold at the yellow point and that crack sold there came in vials with yellow caps.  The evidence linking Colón to the yellow point included, perhaps most importantly, the testimony of Colón's coconspirator Soto and that of Colón's friend Rivera.  Cf. United States v. Richards, 241 F.3d 335, 343 (3d Cir. 2001) (no plain error despite Jencks Act violation because, inter alia, there was "separate reliable evidence" of defendant's guilt).  On the facts of this case we cannot say that, even if the Jencks Act were violated, Colón was prejudiced or that the violation "'seriously impaired the fairness, integrity, or public

-21-

reputation'" of the trial.  <u>United States</u> v. <u>Brown</u>, 510 F.3d 57, 72 (1st Cir. 2007) (quoting <u>United States</u> v. <u>Connolly</u>, 341 F.3d 16, 31 (1st Cir. 2003)).  Thus once again, no plain error occurred.[8]

### D.  **Applicability of the Cumulative Error Doctrine**

Colón argues that, in the aggregate, the three sets of purported errors complained of in this appeal necessitate a new trial because they "impugn[ed] the fairness of the proceedings and thus undermine[d] the trustworthiness of the verdict."  <u>United States</u> v. <u>Williams</u>, 146 F.3d 44, 49 (1st Cir. 1998); <u>see also</u> <u>Sepúlveda</u>, 15 F.3d at 1195-96 ("Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect.").  In light of what we have said above, this argument necessarily fails.  <u>Cf.</u> <u>Flemmi</u>, 402 F.3d at 95 n.23 (1st Cir. 2005) ("[B]ecause we have found that none of [the defendant's] individual complaints resulted in substantial

---

[8]  Although this outcome is dictated on the specific facts of this case, we take the opportunity to remind the Government that we do not take Jencks Act violations lightly.  If the rough notes existed in the first place, it would have been much wiser for the Government to have preserved them, considering the likelihood that the notes would be requested at a later time and the possibility of sanctions for contravening the Act.  <u>See</u> 18 U.S.C.A. § 3500(d).  As in <u>United States</u> v. <u>Lieberman</u>, 608 F.2d 889, 897 n.13 (1st Cir. 1979), we need not decide today whether government agents always have a Jencks Act duty to preserve rough interview notes where such notes are subsequently incorporated into a more formal report.  <u>See</u> <u>United States</u> v. <u>Melo</u>, 411 F. Supp. 2d 17, 21-24 (D. Mass. 2006) (discussing the split in our sister circuits on this question). The Government should bear in mind that this remains an open question in our circuit, and should accordingly err on the side of caution.

prejudice and that most are completely without merit, we reject the final contention that his conviction was tainted by cumulative error." (quoting United States v. DeMasi, 40 F.3d 1306, 1322 (1st Cir. 1994))).

### III.  Conclusion

For the reasons discussed above, we affirm Colón's convictions.

**Affirmed**.